**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, et al., Plaintiffs,**

v.

**Samuel R. PIERCE, Jr., et al., Defendants.**

**Civ. A. No. 84–0978.**

United States District Court, District of Columbia.

June 4, 1984.

Charles A. Hobbie, Mark D. Roth, on brief, Washington, D.C., for plaintiffs.

Neil H. Koslowe, U.S. Dept. of Justice, Civil Division, Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This suit was brought by the American Federation of Government Employees (AFGE) and several of its members to challenge the policy of the Veterans Administration which prohibits all VA employees from wearing political buttons while on duty.[1] On April 11, 1984, this Court denied a temporary restraining order, but at the same time it ordered expedited briefing and hearing. Now pending before the Court are cross motions for summary judgment.

 The law which governs the issues here, while not always easy to apply to specific fact situations, is relatively straight-forward. The government may not condition public employment on a basis that violates the First Amendment rights of the employees. *Connick v. Myers,* — U.S. ——, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). However, the scope of the right of public employees to speak is narrower than that of private citizens. *Martin v. Lauer,* 686 F.2d 24, 31 (D.C.Cir. 1982). Regulations issued pursuant to the Hatch Act, 5 U.S.C. § 7324(a)(2), which forbid certain types of political activity, are valid against First Amendment challenge. *U.S. Civil Service Commission v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 93

---

1. AFGE also challenged the same policy with respect to the Department of Housing and Urban Development. After this lawsuit was filed, HUD rescinded its policy, and that part of the action is thus moot.

S.Ct. 2880, 37 L.Ed.2d 796 (1973). However, the wearing of political buttons is not prohibited by the Hatch Act,[2] and a balance must therefore be struck by the Court between the interests employees have in commenting on matters of public concern and the interests of government in promoting the efficiency of the public service. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). That balance differs depending upon the type of expression, the nature of the agency, and the context in which the expression is made. *Martin v. Lauer, supra.*

5 C.F.R. § 733.111(a), a regulation issued by the Civil Service Commission, provides that "each employee retains the right to ... display a political button," and subsection (b) of the same section states that

Paragraph (a) of this section does not authorize an employee to engage in political activity in violation of law, while on duty, or while in a uniform that identifies him as an employee. The head of an agency may prohibit or limit the participation of an employee or class of employees of his agency in an activity permitted by paragraph (a) of this section, if participation in the activity would interfere with the efficient performance of official duties, or create a conflict or apparent conflict of interests.

Under the plain language of this regulation, the head of an agency may not adopt an across-the-board prohibition with respect to an otherwise authorized activity, such as the wearing of political buttons; any such provision must be limited to "an employee or class of employees." Moreover, the restriction on such activity by an employee or class of employees must have a specific purpose: it must have as its basis

the protection of the efficient performance of official duties or the prevention of a conflict or apparent conflict of interest.[3] The orders issued by the head of the VA are plainly violative of this regulation, for (1) they are not restricted to an employee or a class of employees but indiscriminately prohibit *all* VA employees from wearing political buttons, and (2) they are bottomed neither on the efficient performance of duties nor on the prevention of conflicts of interest. See pp. 5–7 *infra.*

The government argues that the regulation either does not mean what it plainly and literally says or that it should not be applied as being beyond the competence of the Civil Service Commission. For the reasons discussed in note 3 *supra,* those arguments are not persuasive. However, even if the regulation were to be disregarded it would not help the VA's case.

The government recognizes that in this area, unlike in many others involving administrative action, an agency determination is not *ipso facto* valid, but the Court may, indeed it must, balance the governmental interests against the First Amendment interest of the employees, and come to a conclusion regarding restrictions on free speech or expression based upon that balance. Upon balancing these interests, the Court has concluded, as does the Civil Service regulation cited above, that an across-the-board prohibition of the wearing of political buttons is invalid. Such a prohibition is overbroad, for there are far less sweeping means available to safeguard legitimate governmental interests. See, *e.g., Police Department of the City of Chicago v. Moslen,* 408 U.S. 92, 102, 92 S.Ct. 2286, 2293, 33 L.Ed.2d 212 (1972); *Hobbs v.*

---

**2.** The government concedes that the Hatch Act does not prohibit the wearing of political buttons.

**3.** The government argues that to take the regulation literally would be to contravene the intention of the drafters. Memorandum at 14. However, in support of that contention the government cites basically only a memorandum issued several years prior to the adoption of the regulation by the Civil Service Commission's

general counsel. That memorandum refers agency heads back to 5 U.S.C. § 301, the general governmental housekeeping statute. It is difficult to see on what basis this old memorandum or the general housekeeping statute could be held to supersede a specific regulation operating in the very field with which we are here concerned, particularly where the effect of such a construction would be to infringe First Amendment rights.

*Thompson,* 448 F.2d 456, 459 (5th Cir. 1971).

The VA has provided a rationale for its policy consisting basically of three parts, as follows.

First, it is claimed that the wearing of buttons might cause political problems between subordinates and supervisors as well as between fellow employees. This argument would be more persuasive were it not for the fact that most federal agencies either lack "button" regulations altogether or fail to enforce such regulations as may be on their books.[4] No reason is given, other than the personal judgment of the Deputy VA Administrator, why the prohibition which has proved not to be necessary elsewhere must be enforced in the Veterans Administration.

Second, the VA claims that nearly all of its employees have contact with veterans, their dependents, or other members of the public, and that if the employees wore political buttons, this would imply to outsiders an endorsement by the agency of particular candidates. The VA's premise is plainly incorrect. At least one of the three individual plaintiffs has no outside contacts, and in that this employee appears to be typical of many others in the agency.[5] Other agencies, such as the Social Security Administration and the Department of Defense, have frequent client contact without having felt the need for the broad kind of restrictions the VA has imposed.

In any event, an appearance of governmental endorsement could clearly be avoided by less sweeping measures. One appropriate means to protect that interest would be to prohibit the wearing of political buttons by those employees who come in substantial contact with the public. Another might be to require employees to remove their political buttons when they actually meet with members of the public.[6] The Court does not attempt here to prescribe a specific form of regulation. It is clear, however, that the VA must make a far more serious attempt than it has done to distinguish between the classes of employees which may not be prohibited from wearing buttons (given the dictates of the Constitution, the statutes, and the regulations) and those which may be so prohibited.

Third, the Deputy VA Administrator states that the VA

... has long had a special and close relationship with veterans service organizations including the American Legion, the Veterans of Foreign Wars, Disabled American Veterans, and many others. Some of these organizations engage in political activity and endorsements of particular candidates. Political displays by employees, such as the wearing of political buttons, supporting candidates supported by such organizations may give the impression to the service organizations, to individual clients and even to other VA employees that our relationship with such organization extends beyond legitimate bounds or that we favor one group's politics over another[']s. *Likewise, political displays in opposition to a service organization[']s endorsed candidates may unnecessarily alienate such groups* (emphasis added).

---

**4.** Among agencies in these categories are the Department of the Air Force, the Department of Health and Human Services, the Department of Transportation, the U.S. Information Agency, the Office of Personnel Management, and, most recently, the Department of Housing and Urban Development. There is a dispute about the policies followed by the Departments of Commerce and Labor.

**5.** Among the kinds of positions occupied by VA employees are the following: cook, baker, laundry worker, clerk-stenographer, card punch operator, fire fighter, plumber, voucher examiner, payroll clerk, telephone operator, mail clerk, and many others unlikely to have contact with the public—let alone with veterans—on any kind of regular basis.

**6.** The government argues that these prophylactic measures would be impractical. Impracticability is certainly not apparent, and failure to implement such measures appears to be due essentially to the facile assumption that a sweeping prohibition is easier to enforce. That, however, is not the way in which First Amendment problems should be or have traditionally been approached.

American citizens may not, consistently with the Constitution and laws of the United States, be deprived of their legitimate rights because the exercise of these rights might be offensive to what the government regards as the "constituent service organizations" of a particular department,[7] that is, those organizations which may be the public or legislative supporters of that department. It is precisely in order to avoid this kind of response to potential pressure that the courts have consistently upheld the rights of public employees to engage in First Amendment activities [8] except where such an exercise was inconsistent with the efficiency of the service or presented a conflict of interest.[9]

For the reasons stated, the Court will enjoin the Veterans Administration from enforcing its policy, whether embodied in VA Personnel Manual MP–5 or otherwise, which prohibits the employees of that agency from wearing political buttons during duty hours.[10] However, the injunction will be stayed for a period of fifteen days to enable the Veterans Administration to adopt a narrower regulation which is consistent with the law and the regulations.

---

7. Excerpt from transcript of oral argument at 3.

8. The government cites *McGurran v. Veterans Administration*, 665 F.2d 321 (10th Cir.1981) and *Smith v. United States*, 502 F.2d 512 (5th Cir.1934) to the contrary. In *McGurran*, the prohibition—a requirement that political posters be displayed in particular areas—was narrowly focused and had a minimal effect on First Amendment rights. In *Smith*, the court upheld a VA restriction on the wearing of a "peace pin" by a Veterans Administration employee during

the Vietnam war, but there, unlike here, the prohibition was preceded by a careful inquiry tailored to the particular narrow problem.

9. The Court is unwilling to regard as a conflict of interest a political position taken by an employee which is inconsistent with that agency's "constituent service organizations."

10. In view of the general injunction, class action relief is not necessary.