**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Appellant,**

v.

**UNITED STATES POSTAL SERVICE, et al.**

**No. 84–5669.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1985.

Decided June 14, 1985.

---

Anton Hajjar, Washington, D.C., with whom Darryl J. Anderson, Washington, D.C., was on the brief, for appellant.

Mitchell R. Berger, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

John Vanderstar, Washington, D.C., was on the brief for American Civil Liberties Union, et al., amici curiae, urging reversal.

Before EDWARDS, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case involves a challenge by the American Postal Workers Union ("APWU" or "Union") to the legality of United States Postal Service ("USPS") guidelines that restrict the use of postal premises for voter registration. The challenged guidelines provide, first, that registration on postal

property may be conducted only by organizations that do not "participate or intervene" in political campaigns, and, second, that postal employees may not participate in any registration on postal premises. The District Court held both restrictions valid under the First Amendment.[1] The Union appeals.

We agree with the District Court that the Postal Service lawfully may restrict on-premises voter registration to nonpartisan organizations, and we therefore affirm this portion of the District Court's judgment. We find it unnecessary, however, to rule on the constitutionality of the USPS ban on employee participation in such registration. The Union argued in the District Court that that restriction violated not only the First Amendment but also the right of employees under the Hatch Act and its regulations to engage in nonpartisan activities. We hold that the District Court erred in ruling on the constitutionality of the restriction without first deciding whether the case could be decided on nonconstitutional grounds. Therefore, we vacate this portion of the trial court's judgment and remand for further proceedings to determine the legality of the blanket prohibition against employee participation in voter registration on postal premises.

## I. BACKGROUND

Prior to the 1984 election year, a number of APWU locals were permitted to conduct voter registration drives among postal workers and the general public on postal premises. Such drives took place both in public areas such as post office lobbies and in nonpublic, nonwork areas such as "swing rooms," cafeterias and break areas. The APWU and its locals planned to register voters once again during 1984.

On December 1, 1983, however, the Postal Service issued a set of "guidelines" restricting the use of postal premises for registration and polling purposes.[2] The guidelines specify eight conditions limiting postmaster approval of voter registration requests. Two are at issue here. Section A(1) of the guidelines provides:

The registration must be conducted by government agencies or nonprofit civic leagues or organizations that operate for the promotion of social welfare but do not participate or intervene in any political campaign on behalf of any candidate for any public office.

Section A(3) states:

Postal employees must not participate in any voter registration activity conducted on Postal Service premises.

After these guidelines were issued, postal officials prohibited the APWU and its locals from conducting on-premises registration on the ground that the Union "participate[d] or intervene[d]" in the 1984 presidential campaign on behalf of Walter Mondale. The Postal Service also prohibited *all* individual employees from participating in *any* voter registration activities on postal premises, even those conducted by nonpartisan organizations under section A(1) of the guidelines. The A(3) ban thus extends to individual employees without regard to their union affiliation and without distinction between partisan and nonpartisan activity.

On January 24, 1984, the APWU filed this action on behalf of itself, its members, and postal employees represented by it. The Union sought a declaration that sections A(1) and A(3) were contrary to applicable civil service laws and violated the constitutional rights of the Union, its members, and other employees, and requested an injunction against their enforcement. On cross-motions for summary judgment, the District Court upheld the constitutionality of both restrictions, and this appeal followed.[3]

1. *American Postal Workers Union v. United States Postal Serv.,* 595 F.Supp. 1352 (D.D.C. 1984).

2. POSTAL BULLETIN 21434, Dec. 1, 1983, at 9. The guidelines are reproduced as an appendix to the opinion of the District Court, 595 F.Supp. at 1363.

3. The Union's interlocutory appeal from the denial of its motion for a preliminary injunction was rendered moot by the issuance of the Dis-

## II. DISCUSSION

### A. *The A(1) Restriction of Registration to Nonpartisan Organizations*

As the Supreme Court recently indicated in *Perry Education Assn. v. Perry Local Educators' Assn.,* [4] the constitutionality of restrictions on the use of government property for expressive purposes is governed by differing standards depending on the character of the property at issue.[5] Applying the analysis outlined in *Perry,* the District Court ruled that the APWU's right of access to postal premises for voter registration purposes was controlled by the standards applicable to a "nonpublic forum." [6] Finding the restriction to be viewpoint neutral and "reasonable in light of the purpose which the forum at issue serves," the trial court held A(1) valid under the First Amendment, and further held that the restriction was properly applied to the APWU.[7]

We agree with the District Court that the nonpublic forum standard is applicable to the APWU's access claim, that the Postal Service's interest in avoiding an appearance of involvement in the political process is reasonably promoted by restricting on-premises registration to clearly nonpartisan organizations, and that the provision was properly applied to the APWU. Accordingly, we affirm the judgment of the District Court on this issue for substantially the reasons stated in its opinion.

### B. *The A(3) Ban on Employee Participation in On-Premises Registration*

Section A(3) prohibits postal employees, whether on-or off-duty, from participating in any voter registration activity conducted on postal premises. As a consequence, the restriction covers all employees without regard to their union membership and without distinction between partisan and nonpartisan activity. According to the USPS, the purposes of this restriction are (1) "to avoid any possible appearance that the Postal Service is involved, through its employees, in the political process," and (2) "to prevent coercion or the appearance of coercion of other postal employees who otherwise might feel pressured either to register to vote or to register a certain way if approached on postal premises by their coworkers." [8] The District Court, applying the balancing test of *Pickering v. Board of Education,* [9] held that these governmental interests outweighed the First Amendment interests of postal employees, and therefore upheld the constitutionality of section A(3).[10]

We find it unnecessary to reach the question of the constitutionality of section A(3). It is the settled practice of the

---

trict Court's decision on the merits on September 25, 1984. *See American Postal Workers Union v. United States Postal Serv.,* No. 84–5290 (D.C.Cir. Oct. 15, 1984) (dismissing appeal as moot). On October 1, 1984, a panel of this court granted the Union's motion for an injunction pending appeal. *American Postal Workers Union v. United States Postal Serv.,* No. 84–5669 (D.C.Cir. Oct. 1, 1984). That injunction fully expired after voter registration deadlines had passed in all states.

**4.** 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

**5.** *Id.* at 44, 103 S.Ct. at 954.

**6.** The trial court expressed the view that the Postal Service's grant of access to nonpartisan organizations did not transform postal premises into "limited public forums," but reasoned that, even if it did, the right of access extended only to other entities of similar character. Because

it found that the APWU participated in a political campaign within the meaning of section A(1), the court ruled that the APWU was not an entity of similar character and that its right of access thus was not governed by the standards applicable to limited public forums. 595 F.Supp. at 1357 (citing *Perry,* 460 U.S. at 48, 103 S.Ct. at 956). We agree with this reasoning, and therefore we do not find it necessary to determine whether the grant of access in this case was sufficient to create a limited public forum.

**7.** 595 F.Supp. at 1357–60 (quoting *Perry,* 460 U.S. at 49, 103 S.Ct. at 957).

**8.** Affidavit of William B. Thomas ¶¶ 15, 16 ("Thomas Affidavit"), Joint Appendix ("J.A.") 219–20.

**9.** 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

**10.** 595 F.Supp. at 1361–62.

federal courts not to decide constitutional questions where a case may be decided on other grounds.[11] Throughout these proceedings, the Union has argued that section A(3) violates not only the First Amendment, but also the rights of employees under the Hatch Act and its regulations to engage in nonpartisan activities.[12] We think that there is a serious question whether, in view of the Hatch Act regulations, the Postal Service may restrict the right of individual employees to participate in nonpartisan voter registration drives, particularly where such drives are conducted by civic organizations and similar groups which have been granted access to postal facilities for that purpose. Because the District Court failed to consider this question before reaching the constitutional issue, we vacate its judgment with regard to section A(3) and remand for an initial determination on the nonconstitutional question.

The Hatch Act bars federal employees from taking "an active part in political management or in political campaigns."[13] In *United Public Workers v. Mitchell,*[14] the Supreme Court made clear that this prohibition "forbids only the *partisan* activity of federal personnel deemed offensive to efficiency":

> It is only *partisan* political activity that is interdicted. It is active participation in political management and political campaigns. Expressions, public or private, on public affairs, personalities and mat-

ters of public interest, not an objective of party action, are unrestricted by law so long as the government employee does not direct his activities toward party success.[15]

The Postal Service appears to acknowledge that section A(3) prohibits USPS employees from engaging in *non-partisan* as well as partisan voter registration.[16] It is difficult on the record before us to see how such a restriction can be justified under the Hatch Act, at least as applied to registration in public areas of the post office in which the Postal Service allows nonpartisan groups to conduct registration.

The Hatch Act defines the phrase "an active part in political management or in political campaigns" to mean those acts that were prohibited by determinations of the Civil Service Commission ("CSC" or "Commission") before July 19, 1940.[17] In *United States Civil Service Commission v. National Association of Letter Carriers,*[18] the Supreme Court stated that this provision was intended to deprive the Commission of authority to "fashion[ ] a more expansive definition of the kind of conduct that would violate the prohibition against taking an active part in political management or political campaigns."[19] Instead, the Court found, Congress intended to adopt the Commission's 1940 restatement of the law of forbidden political activity, as developed and refined in subsequent re-

---

**11.** *See Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

**12.** *See, e.g.,* Brief of Appellant at 27–32; Memorandum of Points and Authorities in Support of Plaintiff's Motion for a Preliminary Injunction, Record Document No. ("R.") 9, at 14–18; Memorandum of Points and Authorities in Support of Motion for Summary Judgment, R. 30 at 12–16.

**13.** 5 U.S.C. § 7324(a)(2) (1982). The Hatch Act and its regulations are made applicable to the Postal Service by 39 U.S.C. § 410(b)(1) (1982) and 5 C.F.R. § 733.301 (1983).

**14.** 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

**15.** *Id.* at 99, 100, 67 S.Ct. at 569, 570 (emphasis added). In *United States Civil Serv. Comm'n v.*

*National Ass'n of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the Court "unhesitatingly reaffirm[ed]" its holding in *Mitchell,* including the view that the Hatch Act's prohibitions apply only to partisan activities. *Id.* at 556, 564, 93 S.Ct. at 2890.

**16.** *See* Brief for Appellees at 44–47. Similarly, the District Court recognized that the A(3) ban applies *"regardless of whether the activity is partisan or nonpartisan."* 595 F.Supp. at 1360 (emphasis in original).

**17.** 5 U.S.C. § 7324(a).

**18.** 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).

**19.** *Id.* at 571–72, 93 S.Ct. at 2893–94.

statements and regulations issued by the Commission.[20]

Those regulations, which currently appear at 5 C.F.R. § 733, clearly recognize a right of federal employees to take part in the sort of registration drives permitted under section A(1). Consistent with the Supreme Court's interpretation of the Hatch Act in *Mitchell* and *Letter Carriers*, the Hatch Act regulations distinguish between partisan and nonpartisan activities, and prohibit only enumerated sorts of partisan conduct.[21] Although voter registration is not included on the list of prohibited activities, some Commission decisions have held that employees may not take part in *partisan* voter registration efforts; the Commission has never held, however, that participation in *nonpartisan* registration drives violates the Hatch Act.[22] Indeed, part 733.111(a)(4) of the regulations expressly allows employees to "[p]articipate in the nonpartisan activities of a civic, community, social, labor, or professional organization, or of a similar organization." The regulations further provide that "[a]ll employees are free to engage in political activity to the widest extent consistent with the restrictions imposed by law and this subpart."[23]

Thus, the Hatch Act regulations clearly recognize the right of employees to participate in nonpartisan voter registration activities. By prohibiting all postal employees from taking part in any voter registration on postal premises, regardless of its partisan or nonpartisan character, section A(3) seems to interfere with this right. For these reasons, we believe that the appellant has raised a serious issue concerning the validity of section A(3).

On remand, the District Court should determine whether there is any legal basis for the A(3) restriction. In particular, the trial court should consider whether, as the appellees contend, section A(3) can be justified as an exercise of the authority to impose additional restrictions delegated to the heads of agencies by 5 C.F.R. § 733.-111(b).[24] That provision states in relevant part:

> The head of an agency may prohibit or limit the participation of an employee or class of employees of his agency in an activity permitted by paragraph (a) of this section, if participation in the activity would interfere with the efficient performance of official duties, or create a conflict or apparent conflict of interests.[25]

For an agency regulation to be valid under 5 C.F.R. § 733.111(b), several requirements must be satisfied. First, the regulation must be issued by "[t]he head of an agency." Second, without deciding the point for this court, we note that Judge Harold H. Greene recently ruled in *American Federation of Government Employees v. Pierce*[26] that

> [u]nder the plain language of [5 C.F.R. § 733.111(b)], the head of an agency

---

**20.** *Id.* at 572–75, 93 S.Ct. at 2893–95.

**21.** 5 C.F.R. § 733.111, 122 (1983).

**22.** *See, e.g., Clarence M. Fitzwilliam,* 1 P.A.R. 77, 80 (1945) (indicating that a voter registration drive under certain circumstances could constitute partisan activity). The Commission's 1940 rules state that federal employees must refrain, *inter alia,* from "helping to get out the voters on registration and election days." CSC Form 1236, Political Activity and Assessments, September 1939 ¶ 20, *reprinted in Letter Carriers,* 413 U.S. at 586 app. In context, this prohibition refers to partisan efforts to get out the vote, and the Commission has never interpreted the ban to apply to nonpartisan registration activities. For example, a recent summary of Hatch Act restrictions prepared by the Office of Special Counsel of the Merit Systems Protection Board, which has succeeded to the prosecutorial function of the Commission, states that employees are free "to actively assist in voter registration drives" so long as they do "not attempt to influence voters to register for a particular party." OFFICE OF SPECIAL COUNSEL, U.S. MERIT SYS. PROTECTION BD., POLITICAL ACTIVITY AND THE FEDERAL EMPLOYEE 7, *reprinted in* J.A. 136.

**23.** 5 C.F.R. § 733.111(a) (1983).

**24.** *See* Brief for Appellees at 47 n. 16.

**25.** 5 C.F.R. § 733.111(b) (1983).

**26.** 586 F.Supp. 1559 (D.D.C.1984).

may not adopt an across-the-board prohibition with respect to an otherwise authorized activity . . .; any such provision must be limited to "an employee or class of employees."[27]

Third, the restriction must have as its purpose "the efficient performance of public duties" or the avoidance of "a conflict or apparent conflict of interest."[28] Finally, it is clear that regulations issued by the heads of agencies under 5 C.F.R. § 733.-111(b), no less than those issued by the Commission and its successor, the Office of Personnel Management ("OPM"), must be limited to partisan activity of the sort that Congress intended the Hatch Act to restrict.[29]

There is a question whether the A(3) restriction satisfies these criteria. First, the record indicates that the guidelines were issued by the USPS Delivery Services Department rather than by "[t]he head of [the] agency."[30] Second, in prohibiting *all*

postal employees from participating in on-premises registration, section A(3), like the regulation at issue in *AFGE v. Pierce,* does not appear to be limited to "an employee or class of employees."[31]

Finally, on the present record, it does not appear to us that there are any legitimate justifications for the A(3) ban, at least as applied to public areas such as lobbies. As we have noted, the Postal Service attempts to justify the A(3) restriction as necessary (1) to avoid an appearance that the Postal Service was involved, through its employees, in the political process, and (2) to prevent potential "coercion" of employees to register or to register in a certain way. We believe that these justifications are extremely tenuous as applied to registration in public areas. We find it difficult to see how the public could conceivably lose confidence in the political neutrality of the Postal Service if off-duty, out-of-uniform postal employees were permitted to take part in

---

**27.** *Id.* at 1561.

**28.** *See id.*

**29.** We therefore consider untenable the appellees' argument that § 733.111(b) authorizes agency heads to restrict not merely *partisan* conduct but also *nonpartisan* activities without regard to the limits of the regulations under the Hatch Act. As we have observed, the Supreme Court has made clear that the Hatch Act "forbids only the *partisan* activity of federal personnel deemed offensive to efficiency." *United Public Workers v. Mitchell,* 330 U.S. at 99, 67 S.Ct. at 569 (emphasis added). In *Letter Carriers,* the Court declared that, in amending the Hatch Act in 1940, "Congress intended to deprive the Civil Service Commission of rulemaking power in the sense of exercising a subordinate legislative role in fashioning a more expansive definition of the kind of conduct that would violate the prohibition against taking an active part in political management or political campaigns." 413 U.S. at 571–72, 93 S.Ct. at 2893–94. Since the CSC and the OPM were clearly denied authority to impose restrictions beyond those imposed by the Hatch Act, they obviously lacked power to delegate any such authority under § 733.111(b).

For similar reasons, we find no merit in the appellees' contention that the USPS's general grant of rulemaking authority in 39 U.S.C. § 401(2) (1982) affords the Postal Service authority to restrict nonpartisan activity by off-

duty employees in defiance of the bounds of the Hatch Act regulations. In adopting the Hatch Act, Congress struck a balance between government and employee interests with regard to political activity, and determined that only certain partisan conduct should be forbidden. *Letter Carriers,* 413 U.S. at 564, 93 S.Ct. at 2890. Congress charged the Civil Service Commission with responsibility for enforcement of the Act and carefully circumscribed the Commission's authority to impose restrictions beyond those that Congress intended. *Id.* at 571–72, 575, 93 S.Ct. at 2893–94, 2895. Congress' efforts to limit the reach of the Hatch Act would be nullified if agencies were generally free to impose greater restrictions on off-duty employee political activity. The appellees have pointed to nothing in the language, legislative history, or purposes of the Postal Reorganization Act to suggest that Congress intended § 401(2) to confer the sweeping authority that the USPS claims. Instead, that Act expressly makes the specific provisions of the Hatch Act applicable to the Postal Service. 39 U.S.C. § 410(b)(1) (1982). We decline to hold that, in granting the Postal Service the general authority to make rules, Congress intended to confer plenary authority to regulate employee political activity and impose restrictions beyond those imposed by the Hatch Act.

**30.** *See* 595 F.Supp. at 1363 app.; Thomas Affidavit ¶ 1–4, J.A. 216–17.

**31.** *See AFGE v. Pierce,* 586 F.Supp. at 1561.

voter registration drives conducted in postal lobbies by nonpartisan organizations under section A(1). Similarly, the likelihood that employees could be "coerced" into registering for a particular party if their coworkers are allowed to take part in such nonpartisan registration appears to us equally remote. In any event, it seems to us better assessed after development of facts bearing on the likelihood of coercion under these circumstances.

Thus, on the record before us, we can find no valid justification for a restriction on the right of employees under the Hatch Act regulations to participate in non-partisan voter registration conducted by civic and similar organizations in public areas such as postal lobbies.[32] However, because this issue was not considered by the District Court or fully explored at oral argument, we remand the case for an initial determination by the trial court.

### III. CONCLUSION

We affirm the judgment of the District Court insofar as it holds section A(1) lawful. We vacate that court's judgment with respect to the validity of section A(3), and remand the case for a determination whether the restriction is consonant with the Hatch Act and applicable regulations.

*So ordered.*

---

**32.** We recognize that somewhat different considerations are presented by the question of the right of employees to engage in nonpartisan registration in nonwork, nonpublic areas of postal facilities. On remand, the District Court should determine whether such registration is prohibited by A(3), or by the operation of A(1), and whether there is any legal basis for prohibiting all registration in non-work, non-public areas under either A(3) or A(1).