Dear House of Representatives Plunk,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Title 37 O.S. 1991, § 511(C) prohibits a member of theAlcoholic Beverage Laws Enforcement ("ABLE") Commission (a"Commissioner") from "actively participat[ing], as a candidate orotherwise, in any political campaign held in this state." Whatare the limits of a Commissioner's participation with respect topolitical campaigns and candidates in the State of Oklahoma?
 2. May an ABLE Commissioner participate in political campaignsand make contributions to candidates for state or federal officesin states other than Oklahoma without violating 37 O.S. 1991, §511(C)?
 3. May an ABLE Commissioner enter into a contract (through apolitical consulting business operated as a sole proprietorship)for the purpose of providing political fund-raising advice andconsulting services to other political consultants withoutviolating 37 O.S. 1991, § 511(C), if the Commissioner doesnot personally participate in the consulting services but doesreceive income?
¶ 1 Your questions relate to certain restrictions set forth in37 O.S. 1991, § 511[37-511](C). Therefore, this Opinion begins by setting forth the restrictions found in the subsection:
 C. It shall be unlawful for any member of the ABLE Commission, the Director, Assistant Director, any inspector, attorney or other agent or employee of the ABLE Commission, to actively participate, as a candidate or otherwise, in any political campaign
held in this state. Nor shall any such member of the ABLE Commission, Director, Assistant Director, or other agent or employee of the ABLE Commission lend, expend or contribute any money, funds, property or other thing of value, or use his official position, for the purpose of securing the nomination or election or the defeat of any candidate for public office in the State of Oklahoma. Any person who shall violate the provisions of this subsection shall, upon conviction, be fined not less than Two Thousand Five Hundred Dollars ($2,500.00) nor more than Five Thousand Dollars ($5,000.00), or imprisoned in the county jail for not more than one (1) year, or both such fine and imprisonment. Any person found guilty of violating the provisions of this subsection shall, in addition to the criminal penalty imposed herein, be discharged from the office or position he holds upon conviction and shall not be rehired to any state position.
Id. (emphasis added).
¶ 2 This statute addresses two separate forms of expression: 1) active participation in political campaigns and 2) contributions to candidates.[1]
 I. Expression of Political Opinion
¶ 3 Even something as close to the core of the First Amendment as participation in political campaigns may be prohibited to government employees[2]
 A. First Amendment Considerations
¶ 4 The freedom to express one's political views falls within the protections of the First Amendment to the United States Constitution as well as Article II, § 22 of the Oklahoma Constitution. See generally Broadrick v. Oklahoma,413 U.S. 601 (1973). While political speech is protected by theFirst Amendment, it is not completely free from restriction. See id.;see also Connick v. Myers, 461 U.S. 138 (1983); Acevedo v. Cityof Muskogee, 897 P.2d 256 (Okla. 1995); and United States v.National Treasury Employees Union, 513 U.S. 454 (1995).
¶ 5 The United States Supreme Court has upheld the constitutionality of both federal and state statutory provisions which restrict the political activity of government employees. InUnited States Civil Service Commission v. National Associationof Letter Carriers, 413 U.S. 548 (1973), the Court upheld § 9(a) of the Hatch Act, 5 U.S.C. § 7324(a) (1993). This particular section banned federal employees from "active participation in political management or political campaigns." Letter Carriers,413 U.S. at 551. Among other activities, the Petitioners inLetter Carriers wanted to: 1) run in local elections for such offices as school board member, city council member or mayor; 2) write letters on political subjects to newspapers; 3) participate as delegates in a political convention and run for office in a political party; 4) campaign for candidates for political office; and 5) work at polling places on behalf of a political party.See id. at 595 (Douglas, J., dissenting); see also 600 n. 3.
¶ 6 In Letter Carriers the Court noted that the issue of the constitutionality of the Hatch Act had been presented before and upheld. Quoting United Public Workers v. Mitchell,330 U.S. 75 (1947), the Court stated:
 Congress and the President are responsible for an efficient public service. If, in their judgment, efficiency may be best obtained by prohibiting active participation by classified employees in politics as party officers or workers, we see no constitutional objection.
Id. at 554 (citations omitted) (footnote omitted).
¶ 7 The Court further provided that it would uphold the constitutionality of any statute if:
 [I]n plain and understandable language, the statute forbade activities such as organizing a political party or club; actively participating in fund-raising activities for a partisan candidate or political party; becoming a partisan candidate for, or campaigning for, an elective public office; actively managing the campaign of a partisan candidate for public office; initiating or circulating a partisan nominating petition or soliciting votes for a partisan candidate for public office; or serving as a delegate, alternate or proxy to a political party convention. Our judgment is that neither the First Amendment nor any other provision of the Constitution invalidates a law barring this kind of partisan political conduct by federal employees.
Id. at 556.
¶ 8 Likewise, in Broadrick, the United States Supreme Court upheld the constitutionality of an Oklahoma statute which contained political restrictions on classified state employees. The statute at issue, 74 O.S. 1971, § 818[74-818][3] provided that no classified employee "shall, directly or indirectly, solicit, receive, or in any manner be concerned in soliciting or receiving any assessment . . . or contribution for any political organization, candidacy or other political purpose."Broadrick, 413 U.S. at 605-06. Section 818 also prohibited classified employees from belonging to "any national, state or local committee of a political party" or from being "an officer or member of a committee of a partisan political club, or a candidate for . . . any paid public office," or from taking "part in the management or affairs of any political party or in any political campaign, except to exercise his right as a citizen privately to express his opinion and to cast his vote." Id. at 606.
¶ 9 In upholding the constitutionality of the statute, the Court noted that terms such as "partisan," "take part in" and "affairs of" contain uncertainty but were not unconstitutionally "vague." In fact, the Court stated:
 Whatever other problems there are with § 818, it is all but frivolous to suggest that the section fails to give adequate warning of what activities it proscribes or fails to set out "explicit standards" for those who must apply it.
Broadrick, 413 U.S. at 607.
¶ 10 While both Broadrick and Letter Carriers dealt with government employees, the reasoning underlying the Court's decision applies equally to an appointed government official. InLetter Carriers, the Court stated that those who work for government agencies:
 [S]hould administer the law in accordance with the will of Congress, rather than in accordance with their own or the will of a political party. They are expected to enforce the law and execute the programs of the Government without bias or favoritism for or against any political party or group or the members thereof. . . .
 [I]t is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent.
. . . .
 A related concern, and this remains as important as any other, was to further serve the goal that employment and advancement in the Government service not depend on political performance, and at the same time to make sure that Government employees would be free from pressure and from express or tacit invitation to vote in a certain way or perform political chores in order to curry favor with their superiors rather than to act out their own beliefs.
Letter Carriers, 413 U.S. at 564-66 (citations omitted).
¶ 11 Thus, the First Amendment does not per se prohibit limits on an ABLE Commissioner's activity.
B. Partisan vs. Nonpartisan Political Activity
¶ 12 Title 37 O.S. 1991, § 511[37-511](C) provides that it is unlawful for an ABLE Commissioner or employee "to actively participate, as a candidate or otherwise, in any political campaign." In Letter Carriers, the Court upheld the constitutionality of the Hatch Act, which restricted federal employees from "active participation in political management or political campaigns.'[4]
¶ 13 413 U.S. at 551. In Broadrick, the statute at issue prohibited a classified employee from taking "part in the management or affairs of any political party or in any political campaign, except to exercise his right as a citizen privately to express his opinion and to cast his vote." 413 U.S. at 606
(quoting 74 O.S. 1971 § 818[74-818]).
¶ 14 Notably, each statute prohibits the participation in a "political campaign." It is not clear, however, whether the term "political campaign" includes both partisan political activity and nonpartisan, or issue related, political activity.
¶ 15 The term "political campaign" is not defined under Oklahoma statutory law. The term "campaign," however, is defined. Both 21 O.S. Supp. 1999, § 187[21-187](3) and 74 O.S. Supp. 1999, ch. 62, app., 257:1-1-2 of the Ethics Commission Rules define "Campaign" as:
 [A]ll activities for or against the election of a candidate to a specific state office for a specific term or the passage or defeat of a ballot measure from the date of acceptance of the first contribution, the making of the first expenditure, or the filing of a declaration of candidacy, whichever is first, until a final campaign contributions and expenditures report is filed.[5]
Id.
¶ 16 Under this statutory definition, a campaign includes both partisan elections and non-partisan campaigns such as initiative petitions and state question elections. While section 511(C) is not unconstitutional on its face, the ability of the state to prohibit government employees and officials from exercisingFirst Amendment freedoms with regard to purely nonpartisan activities has not been clearly established.[6]
¶ 17 An arguably narrow interpretation of the Hatch Act was given by the majority in Letter Carriers. There, the Court accepted the Civil Service Commission regulations as the then current interpretation of forbidden political activity. At that time, the Hatch Act allowed employees to express their opinions on political subjects and candidates and exempted nonpartisan political activity. "[Q]uestions, . . . that are not identified with national or state political parties are not covered by the Act, including issues with respect to constitutional amendments, referendums, approval of municipal ordinances, and the like."Letter Carriers, 413 U.S. at 576.
 The Act permits the individual employee to "express his opinion on political subjects and candidates," 5 U.S.C. § 7324(b); and the corresponding regulation, 5 CFR § 733.111(a)(2), privileges the employee to "(e)xpress his opinion as an individual privately and publicly on political subjects and candidates." The section of the regulations which purports to state the partisan acts that are proscribed, id., § 733.122, forbids in subparagraph (a)(10) the endorsement of "a partisan candidate for public office or political party office in a political advertisement, a broadcast, campaign literature, or similar material," and in subparagraph (a)(12), prohibits "(a)ddressing a convention, caucus, rally, or similar gathering of a political party in support of or in opposition to a partisan candidate for public office or political party office." Arguably, there are problems in meshing § 733.111(a)(2) with §§ 733.122(a)(10) and (12), but we think the latter prohibitions sufficiently clearly carve out the prohibited political conduct from the expressive activity permitted by the prior section to survive any attack on the ground of vagueness or in the name of any of those policies that doctrine may be deemed to further.
Letter Carriers, 413 U.S. at 579-80.
¶ 18 Likewise, in Broadrick, the Court noted that § 818 had been interpreted by the State's Attorney General as only prohibiting "clearly partisan activity." Broadrick,413 U.S. at 617 (citations omitted).
¶ 19 Recently, the United States Court struck down a section of the Ethics in Government Act of 1978 as it applied to Executive Branch employees below grade GS-16. The Court held that the provision which prohibited federal employees, below grade GS-16, from accepting any compensation from making speeches or writing articles, even if the speech and articles bore no connection to the employee's official duties, violated the First Amendment.See United States v. National Treasury Employees Union,513 U.S. 454, 457 (1995). In tracing the history of this line ofFirst Amendment cases, the Court stated:
 Because the vast majority of the speech at issue in this case does not involve the subject matter of Government employment and takes place outside the workplace, the Government is unable to justify § 501(b) on the grounds of immediate workplace disruption asserted in Pickering and the cases that followed it. Instead, the Government submits that the ban comports with the First Amendment because the prohibited honoraria were "reasonably deemed by Congress to interfere with the efficiency of the public service."
 In Mitchell we upheld the prohibition of the Hatch Act, on partisan political activity by all classified federal employees, including, for example, a skilled mechanic at the mint named Poole who had no policymaking authority. We explained that "[t]here are hundreds of thousands of United States employees with positions no more influential upon policy determination than that of Mr. Poole. Evidently what Congress feared was the cumulative effect on employee morale of political activity by all employees who could be induced to participate actively." In Civil Service Comm'n v. Letter Carriers, we noted that enactment of the Hatch Act in 1939 reflected "the conviction that the rapidly expanding Government work force should not be employed to build a powerful, invincible, and perhaps corrupt political machine."An equally important concern was
 "to further serve the goal that employment and advancement in the Government service not depend on political performance, and at the same time to make sure that Government employees would be free from pressure and from express or tacit invitation to vote in a certain way or perform political chores in order to curry favor with their superiors rather than to act out their own beliefs."
 Thus, the Hatch Act aimed to protect employees' rights, notably their right to free expression, rather than to restrict those rights. Like the Hatch Act, the honoraria ban affects hundreds of thousands of federal employees. Unlike partisan political activity, however, honoraria hardly appear to threaten employees' morale or liberty. Moreover, Congress effectively designed the Hatch Act to combat demonstrated ill effects of Government employees' partisan political activities. In contrast, the Government has failed to show how it serves the interests it asserts by applying the honoraria ban to respondents.
Id. at 470-71 (citations omitted).
¶ 20 From the reasoning cited above, it may appear the Court has taken the view that government can only restrict partisan
political activity. Circuit Court of Appeals decisions, however, have upheld prohibitions on nonpartisan political activity.See Wachsman v. City of Dallas, 704 F.2d 160, 170 (5th
Cir. 1983) (upholding city charter provisions prohibiting city employees from participating in nonpartisan city council elections); Magill v. Lynch, 560 F.2d 22, 29 (1st Cir. 1977) (upholding a city charter provision barring city employees from being candidates in nonpartisan city elections); McCormickv. Edwards, 646 F.2d 173, 179 (5th Cir. 1981) (holding it is not unconstitutional for a state to dismiss a non-civil service employee from engaging in political activities prohibited for civil service employees); cf. American Postal Workers Union,AFL-CIO v. United States Postal Serv., 764 F.2d 858, 862 (D.C. Cir. 1985) (questioning, but not determining, whether Postal Service may restrict right of employees to participate in nonpartisan voter registration drives).
C. Public vs. Private Political Expression
¶ 21 Your first question seeks to define the limits of a Commissioner's participation in political campaigns and candidates. Section 511(C) does not prohibit a private expression of opinion. The Court in Broadrick noted that the State Personnel Board had construed "section 818's explicit approval of `private' political expression to include virtually any expression not within the context of active partisan political campaigning." Broadrick, 413 U.S. at 617.
¶ 22 While a Commissioner's private political opinion expressed in a private setting does not violate section 511(C), we cannot opine whether a particular situation is "public or private." Determining factors may be whether the purpose of the speech is to effect a campaign or whether the expression holds some political import. What may be characterized as a private conversation between two people can quickly be construed as participating in a campaign if the private conversation takes place at a political rally or perhaps even in a public place where others may easily overhear. Likewise, while a home may be considered a private setting, such a setting takes on a completely different atmosphere when the home is filled with guests.
D. Summary
¶ 23 While general guidelines or factors, as cited above, may be instructive, First Amendment issues are necessarily determined on a case-by-case basis and are fact specific.
¶ 24 Therefore, although political speech is not completely free from restriction, we cannot set forth the definite "limits" of a Commissioner's political freedoms. Determining whether a Commissioner's expressed opinion on political campaigns and candidates violates section 511(C) depends on the particular words spoken, the political import of the speech and the particular setting in which the speech occurs. Therefore, such a determination is outside the scope of an Attorney General Opinion. See 74 O.S. Supp. 1999, § 18b[74-18b](A)(5).
¶ 25 You should also be cognizant of the Oklahoma Supreme Court's following statement concerning government officials:
 Government agencies are uniquely endowed with the power to implement the public will, and as such, are subject to the highest levels of scrutiny by the people whom they serve. Government officials and employees must exercise great care to avoid even the appearance of impropriety in their duties; for they, like Caesar's wife, must be above reproach.
Westinghouse Elec. Corp. v. Grand River Dam Auth.,720 P.2d 713, 717-18 (Okla. 1986).
 II. Political Participation in Federal and State Campaigns Outside Oklahoma
¶ 26 Your second question asks whether 37 O.S. 1991, § 511[37-511](C) prohibits an ABLE Commissioner from participating in political campaigns and making contributions to candidates for federal or state offices in states other than Oklahoma. Section 511(C) prohibits active participation in political campaigns "held in this state." Therefore, an ABLE Commissioner is not prohibited from participating in state or federal political campaigns held outside Oklahoma. Similarly, section 511(C) prohibits contributions to candidates "for public office in the State of Oklahoma." Therefore, an ABLE Commissioner is not prohibited from making contributions to state or federal candidates running for public office outside Oklahoma.
 III. Entering into Contracts with Political Consultants
¶ 27 Your last question asks whether 37 O.S. 1991, § 511[37-511](C) prohibits an ABLE Commissioner from entering into contracts (through a solely-owned business) for the purpose of providing political fund-raising advice and consulting services to other political consultants if the Commissioner does not personally participate but does receive income from the contract.
¶ 28 Section 511(C) prohibits a Commissioner from "actively participat[ing], as a candidate or otherwise, in any political campaign." The section further restricts a Commissioner from lending, expending or contributing any "money, funds, property or other thing of value . . . for the purpose of securing the nomination or election or the defeat of any candidate for public office." Id. This language prohibits "expending" a "thing of value" to assist a candidate, thereby prohibiting a Commissioner from offering political advice to any person-including another political consultant — regardless of compensation.
¶ 29 Your question also asks whether an ABLE Commissioner may receive income from his/her solely-owned consulting business even if the Commissioner does not personally render any consulting services. A solely-owned business is just that — wholly owned by an individual. Any liability of a sole proprietorship is personal liability of the owner. See Bishop v.Wilson Quality Homes, 986 P.2d 512, 515 (Okla. 1999). "This Court has long held that in the case of a sole proprietorship, the firm name and the sole proprietor's name are but two names for one person." Id. at 514-15 (citations omitted).
¶ 30 A sole proprietorship is not a distinct and separate entity from the person who owns the business. Consequently, a solely-owned business which provides political consulting services is the legal equivalent to the owner providing political consulting services. Since section 511(C) prohibits a Commissioner's active participation in a political campaign, a Commissioner's solely-owned business is prohibited from actively participating in a political campaign regardless of whether the business/owner receives income.
¶ 31 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Title 37 O.S. 1991, § 511(C) restricts an ABLECommissioner's freedom to publicly actively participate inpolitical campaigns. We cannot, however, opine as to the definitelimits of an ABLE Commissioner's political freedoms. Determiningwhether a Commissioner's expressed opinion on political issuesand candidates violates section 511(C) depends on the particularwords spoken, the political import of the speech and theparticular setting in which the speech occurred, and would haveto be done on a case-by-case basis.
 2. Title 37 O.S. 1991, § 511(C) does not prohibit an ABLECommissioner from participating in political campaigns and makingcontributions to candidates for state or federal offices instates other than Oklahoma.
 3. Title 37 O.S. 1991, § 511(C) prohibits an ABLECommissioner from entering into contracts (through a politicalconsulting business operated as a sole proprietorship) for thepurpose of providing political fund-raising advice and consultingservices to other political consultants. Likewise, aCommissioner's solely owned business is prohibited from activelyparticipating in a political campaign by rendering consultingservices regardless of whether the Commissioner receives theincome from such consulting services.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GRETCHEN ZUMWALT SMITH ASSISTANT ATTORNEY GENERAL
[1] For a discussion of political contributions, see Buckleyv. Valeo, 424 U.S. 1 (1976) and most recently, Nixon v.Shrink Missouri Gov't PAC, ___ U.S. ___, 120 S.Ct. 897 (2000).
[2] See Waters v. Churchill, 511 U.S. 661, 672 (1994) (citing Broadrick v. Oklahoma, 413 U.S. 601 (1973); andCivil Service Comm'n v. National Ass'n of Letter Carriers,413 U.S. 548 (1973)).
[3] Title 74 O.S. 1971, § 818[74-818] was repealed by Laws 1982, ch. 338, § 61, effective July 1, 1982. Title 74 O.S. Supp. 1999, ch. 62, app., 257:10-1-4 currently restricts certain political activity of state employees.
[4] Section 9(a) of the Hatch Act, codified at5 U.S.C. § 7324(a) (1993) further provided that the phrase "an active part in political management or in political campaigns" meant "those acts of political management or political campaigning which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President." LetterCarriers, 413 U.S. at 550.
[5] Title 21 O.S. Supp. 1991, § 187[21-187](3) encompasses all "local" offices in addition to "state" offices.
[6] Any facial constitutional challenge to legislation confronts a difficult burden. "Facial invalidation `is, manifestly, strong medicine' that `has been employed by the Court sparingly and only as a last resort.' . . . To prevail, respondents must demonstrate a substantial risk that application of the provision will lead to the suppression of speech."National Endowment for the Arts v. Finley, 524 U.S. 569, 580
(1998) (citing Broadrick, 413 U.S. at 613, 615).