**LIBERTY SAVINGS BANK, F.S.B., Plaintiff,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PA., et al., Defendants.**

**No. C–1–89–705.**

United States District Court, S.D. Ohio, W.D.

Oct. 17, 1990.

**560**

Rick David DeBlasis, Lerner, Sampson & Rothfuss Co., Cincinnati, Ohio, for plaintiff.

Frederick Jaeger McGavran, Frost & Jacobs, Cincinnati, Ohio, for defendant American Cas. Co.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon cross-motions for partial summary judgment (Doc. nos. 11 and 15). The Court does hereby set forth its findings of fact, opinion, and conclusions of law.

### Findings of Fact

(1) Plaintiff Liberty Savings Bank (Liberty) is a federal savings bank with its principal place of business in Hillsboro, Ohio.

(2) Defendant American Casualty Company of Reading, Pa. (American Casualty) is an insurance company which issued a financial institution bond to plaintiff. The bond was in effect from September 14, 1986 to September 14, 1987 and applied to losses incurred during that period.

(3) The bond provides, in pertinent part, that the underwriter agrees to indemnify the insured for

(B)(1) Loss of Property resulting directly from . . .

(b) theft, false pretenses, common-law or statutory larceny, committed by a person present in an office or on the premises of the insured . . .

Section 2(e) of the bond expressly excludes from coverage

loss resulting directly or indirectly from the complete or partial non-payment of, or default upon, any loan or transaction involving the Insured as a lender or borrower, or extension of credit, including the purchase, discounting or other acquisition of false or genuine accounts, invoices, notes, agreements or Evidences of Debt, whether such Loan, transaction or extension was procured in good faith or through trick, artifice, fraud or false pretenses, except when covered under Insuring Agreements (A), (D) or (E):

(4) Insuring Agreements (A) (D) and (E) cover loss resulting directly from dishonest or fraudulent acts committed by an employee and loss resulting from transactions involving forged, altered, or lost or stolen documents.

(5) In March of 1987, representatives of Federated Mortgage Corporation (Federated) approached Liberty and inquired whether the institution was interested in purchasing residential first mortgage loans from Federated. In April 1987, plaintiff began approving loans presented by Federated with the understanding that plaintiff would purchase the loans after they were closed by Federated. The understanding was based on an assumption that Federated and Liberty could agree on a price and that the new mortgages would be first mortgages.

(6) Federated obtained from third parties loan applications and loan documentation for certain loans which were refinancings to be secured by first mortgages on single family homes. Federated then submitted the loan applications and loan documentation to Liberty for its preliminary approval. Plaintiff approved the loan applications and loan documentation for twelve loans as meeting its standards for eventual purchase. In late April 1987 and early May 1987, Federated closed each of the twelve loans and obtained from the borrowers notes and mortgages signed by them.

(7) Federated represented to plaintiff that the new mortgages constituted first and best liens on the borrowers' property. In actuality, the homes were encumbered by existing mortgages. Unaware of this fact, plaintiff purchased the loans from Federated and Federated assigned to plain-

tiff the mortgages and notes executed by the borrowers.

(8) In late May and early June 1987, plaintiff discovered that Federated had not paid off the prior mortgages. Plaintiff paid off the prior mortgages at a cost of $630,659.69 so that it had a first mortgage and note on each of the twelve loans. Plaintiff then sold the loans on the secondary mortgage market, retaining only the servicing of said loans. Since the payment of the prior mortgages, the loans have been paid on a current basis.

(9) Plaintiff filed a timely claim under the bond issued by defendant seeking to recover its losses.

(10) Plaintiff has not accused any of its employees of dishonesty in connection with these transactions.

(11) None of the loan documents were forged, altered, lost or stolen.

## OPINION

### *Summary Judgment Standard*

The summary judgment procedure under Fed.R.Civ.Pro. 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting, First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his fa-

vor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (*citing Cities Service,* 391 U.S. at 288–289, 88 S.Ct. at 1592). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

■ Plaintiff seeks to recover the amount it expended to pay off the prior mortgages. Plaintiff claims that its loss is covered under Section (B)(1)(b) of the bond because it results directly from false pretenses committed by a person present in an office or on plaintiff's premises. Defendant contends that coverage of plaintiff's loss is excluded under Section 2(e) of the bond.

There is no dispute as to the meaning of Section 2(e). The language of the clause is unambiguous. The only issue before the Court is whether the loss sustained by plaintiff fits under the terms of the exclusion clause.

Section 2(e) of the bond describes as extension of credit as including "the purchase ... of false or genuine accounts, invoices, notes, agreements or Evidences of Debt ..." The transaction involved in this case is the purchase of mortgages. Under the express terms of the exclusion clause, the purchase must be deemed an extension of credit. The fact that plaintiff did not make the loans, but instead purchased them, does not take the transaction outside of the clause. Indeed, plaintiff concedes that the exclusion clause does not distinguish between a primary lender and one who has

"stepped into the shoes of the primary lender by purchasing the account". Accordingly, if plaintiff's loss is a direct or indirect result of nonpayment or default upon the extension of credit, the bond does not cover such loss.

Plaintiff claims that its loss does not stem from nonpayment or default of a loan or extension of credit but is the direct result of Federated's misrepresentations. Plaintiff alleges that it was forced to pay off the prior mortgages to "tend to avoid" negative publicity and lender liability exposure and because the outstanding prior mortgages would render the loans valueless on the secondary market. Plaintiff further alleges that it is evident from the face of the exclusion clause that it was meant to eliminate the insurer's exposure for bad loans and poor credit decisions made by the insured in its normal lender/borrower or debtor/creditor transactions. Defendant contends that the notes purchased by plaintiff were uncollectible since they were not first mortgages and that plaintiff's loss stems from its inability to collect on the loans.

■ The Court initially notes its disagreement with plaintiff's assertion that the exclusion clause was clearly meant to apply only to situations involving poor judgment by the insured. If the clause were intended to be limited to such situations, then losses resulting from acts beyond the insured's control should be covered. Yet, the exclusion clause expressly extends to losses resulting from trick, artifice, fraud and false pretenses. Moreover, the type of loss involved in this case is not distinguishable in pertinent respects from a loss arising from the exercise of poor judgment. Both are preventable. In this instance, plaintiff could have protected itself against the loss it sustained by conducting title searches to discover the existence of prior liens rather than relying on Federated's representation that none existed. *See Liberty Nat. Bank v. Aetna Life & Casu-*

*alty Co.*, 568 F.Supp. 860, 863 (D.N.J.1983). Thus, excluding plaintiff's loss from coverage under the bond would not contravene the purpose of the exclusion clause as construed by plaintiff.

The parties have cited numerous authorities in support of their respective theories concerning whether coverage of plaintiff's loss is excluded under the bond. The case which is most closely on point is *Third Fed. S. & L. Assn. v. Fireman's Fund Ins.*, 548 F.2d 166 (6th Cir.1977). *Fireman's Fund* involved a bond with an exclusion clause identical in material respects to that at issue in the present case. The plaintiff bank in *Fireman's Fund* had provided financing to a home buyer. The bank was unaware that there were mechanics liens on the home. When the mechanics liens were asserted against the property, the loan was liquidated. The bank paid off the liens after taking title of the property from the purchaser and eventually resold the property at a loss. The United States Court of Appeals for the Sixth Circuit found that the actual cause of the bank's loss was a defect in the purchaser's title to the property which had been mortgaged to the bank as security for its loan. The Court held that although the building constructor may have acted fraudulently in deeding the property to the purchaser without paying the suppliers of labor and material, that fraud did not remove the bank's ultimate loss on the loan from the terms of the exclusion.

*Fireman's Fund* supports a finding that coverage for plaintiff's loss is excluded under the bond. It is undisputed that Federated acted fraudulently in selling mortgages to plaintiff which it represented to be first mortgages. However, Federated's fraud does not take plaintiff's ultimate loss outside of the exclusion clause. The actual cause of plaintiff's loss was its inability to collect on the loans it purchased from Federated.[1] Plaintiff's act of paying off the prior mortgages in order to collect on its loans is so intertwined with plaintiff's pur-

---

1. Plaintiff claims that it paid off the prior mortgages in order to avoid certain adverse consequences and to obtain the benefit of its bargain. However, plaintiff does not dispute defendant's

allegation that the mortgages plaintiff purchased were uncollectible so long as prior mortgages on the homes existed.

chase of the loans that the transactions cannot be segregated and analyzed separately for purposes of applying the exclusion clause. When these transactions are considered as a whole, plaintiff's loss must be deemed a loss resulting directly or indirectly from a default or nonpayment on an extension or credit.

None of the enumerated exceptions to the exclusion clause apply in this case. It is undisputed that plaintiff's loss did not result from dishonest or fraudulent acts committed by an employee or from forgery or alteration of documents. In accordance with the foregoing, the Court finds that plaintiff's loss is excluded from coverage under the terms of the bond.

It is hereby ORDERED that partial summary judgment be GRANTED in favor of defendant.

IT IS SO ORDERED.