**HUDSON UNITED BANK, Plaintiff,**

v.

**PROGRESSIVE CASUALTY INSURANCE COMPANY, Defendant.**

No. 00–4135.

United States District Court, E.D. Pennsylvania.

May 23, 2001.

Wayne J. Martorelli, Matthew A. Taylor, Duane, Morris & Heckscher, Philadelphia, PA, for Hudson United Bank.

Melvin R. Shuster, Harry R. Blackburn & Assoc., PC., Philadelphia, PA, for Progressive Casualty Insurance Company.

## Memorandum and Order

YOHN, District Judge.

Plaintiff Hudson United Bank ("Hudson") is the successor by merger to Regent National Bank ("Regent"). Defendant Progressive ("Progressive") issued a bond to insure Regent against certain types of losses. Hudson sues Progressive for payment under the bond, alleging that the circumstances surrounding Regent's losses in its automobile insurance premium finance business ("IPF business") trigger Progressive's bond obligation. Progressive, arguing that the facts alleged do not trigger its bond obligations, moves for dismissal under Fed.R.Civ.P. 12(b)(6). When reviewed in the light most favorable to Hudson, the facts alleged in the complaint adequately state a cause of action. Progressive's motion will therefore be denied.

## I. Standard of Review

Pending before the court is a motion to dismiss for failure to state claim upon which relief can be granted under Rule 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *See Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). In deciding a motion to dismiss, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the [plaintiff]." Consequently, at this stage of the litigation, "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In deciding a motion to dismiss, a court may also consider exhibits attached to the complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

## II. Background

On July 1, 1994, Regent and K–C Insurance Premium Finance Company ("K–C")

entered into an agreement. Compl. at ¶ 14. K–C was to provide certain processing, servicing, marketing, and consulting services to Regent's IPF business division. *Id.* This division loaned money to drivers—primarily high risk drivers—to enable them to pay for their auto insurance policies. *Id.* at ¶ 7. Regent paid the auto insurer directly for the term of the borrower-driver's policy. *Id.* Over time the borrower-driver paid Regent both the sum it had paid to the insurer and interest on that sum. *Id.* Regent required these borrower-drivers to pay significant down-payments as collateral for their loans, and in the event that a borrower-driver defaulted on the loan, Regent would cancel the borrower-driver's policy and recover losses by seeking a refund of the unused portion of the borrower-driver's premium and by laying claim to the borrower-driver's down-payment. *Id.* The IPF business division's profitability depended on its ability to track payments, generate timely cancellation notices, and receive refunds on the unused portions of defaulters' auto insurance policies. *Id.* at ¶ 11.

Under the Regent—K–C agreement, K–C was to establish and maintain a computer system that would generate the data and reports needed by Regent in these key tasks. *Id.* at ¶ 15. K–C was also to enter account information into the computer and transmit the data to Regent's pre-existing computers. *Id.* at ¶¶ 18, 21, 23. Regent acquired an ownership interest in this computer system. *Id.* at ¶ 16. K–C, as recompense for its services, was to receive a transaction-based servicing fee and a separate fee equal to 50% of profits. *Id.* at ¶ 20.

Regent alleges that K–C, by representing that the IPF business was profitable, concealed the true state of the IPF business from Regent and induced Regent to continue its IPF business. *Id.* at ¶ 22. In particular, K–C used the computer system it had devised to transmit incomplete, inaccurate, and misleading data to Regent. *Id.* at ¶ 23. The data prevented Regent from properly tracking and addressing delinquencies and prevented Regent from properly tracking profits and losses on individual transactions. *Id.* at ¶¶ 27, 28. As a result of the inaccurate data, Regent allegedly incurred $3,919,430.00 in collateral deterioration and overpaid K–C $889,089.00 based on non-existent profits. *Id.* at ¶ 37(c).

On or around October 7, 1997, Regent submitted a Proof of Loss statement to Progressive and sought coverage under the bond. *Id.* at ¶ 38. On June 18, 1999, Progressive denied coverage and declined to make payment on the bond. *Id.* at ¶ 39. On July 12, 2000, following substantial discussion between the parties, Progressive reaffirmed its denial and declination. *Id.* Hudson, Regent's successor by merger, initiated suit against Progressive.

### III. Discussion

Hudson alleges two separate causes of action: liability under the Computer Systems Rider to the bond or, in the alternative, liability under the Fidelity Insuring Agreement of the bond. Compl. at 12, 14. Progressive seeks dismissal of the complaint in its entirety. Def.Mem. at 5, 7, 9. With respect to both causes of action, Progressive argues that the facts alleged in Hudson's complaint do not establish the elements that trigger Progressive's obligation to make bond payments. *Id.*

First, Progressive claims that the exclusion provision of the bond excludes application of the Computer Systems Rider to the facts presented by Hudson. Def.Mem. at 5. Hudson does not dispute that the exclusion applies to the rider. Moreover, the language of the bond itself does not limit the reach of the exclusion to only the

body of the bond, and the language of the rider does not modify or abrogate the exclusion. *Cf. Rorer Group, Inc. v. INA,* 440 Pa.Super. 69, 655 A.2d 123, 125 (1995) (finding that exclusions apply unless endorsement specifically modifies or abrogates them). Accordingly, the court reads the exclusion to apply to the rider.

■ The relevant exclusion provision of the bond excludes coverage for:

> *loss resulting directly or indirectly from the complete or partial nonpayment of, or default upon, any Loan or transaction* involving the Insured as a lender or borrower, or extension of credit, including the purchase, discounting or other acquisition of false or genuine accounts, invoices, notes, agreements or Evidences of Debt, where such Loan, transaction or extension was procured in good faith or through trick, artifice, fraud or false pretenses, except when covered under Insuring Agreement (A), (D), or (E).

Compl., Ex. A (Financial Institution Bond) at § 2(c) (emphasis added). Progressive argues that Regent's losses as described in the complaint stem directly or indirectly from nonpayment of or default on Regent's IPF loans. Def.Mem. at 6. Hudson, on the other hand, argues that Regent's losses as described in the complaint stem from K–C's electronic concealment or accounting data. Pl.Mem. at 8. Moreover, Hudson points out that based on the mechanics of the IPF business, Regent would not have suffered default losses had K–C not concealed data. *Id.*

Here the complaint, when read in the light most favorable to Hudson, shows that Hudson is not claiming that the defaults caused Regent's losses. Rather, Hudson alleges that because K–C concealed data, Regent could not timely cancel defaulters' insurance polices, seek refunds on the unused portions of the premiums, and consequently suffered losses. Hence, but for the concealment, Regent would not have suffered losses, and accordingly the concealment, not the default itself, caused the loss. The exclusion, therefore, does not warrant dismissal in view of Hudson's allegations.

■ Second, Progressive argues that the Computer System Rider, even if not excluded, does not afford coverage under the circumstances presented in the complaint. Def.Mem. at 7. The rider specifically insured Regent for losses resulting from a "fraudulent ... change of Electronic Data or Computer program with any Computer System *operated by the Insured,* whether owned or leased...." Compl., Ex. A, Computer Systems Rider at ¶ 1 (emphasis added). Progressive argues that the computer system at issue was used, owned, and operated by K–C. Def.Mem. at 8–9. However, the complaint alleges that Regent acquired an ownership interest in the IPF computer system, that the computer system was designed by K–C to aid Regent's IPF business, that the computer system was operated by K–C on Regent's behalf, and that the information in the system was transmitted directly to Regent's computer system. Compl. ¶¶ 16, 18, 21. These allegations when understood in the light most favorable to Hudson are sufficient—although perhaps just barely—to justify the inference that the computer system was operated by the insured.

■ Third, Progressive seeks dismissal of Hudson's claim under the Fidelity Insuring Agreement. Under this provision of the agreement, Progressive indemnifies Regent for "[l]oss resulting directly from dishonest or fraudulent acts committed *by an Employee acting alone or in collusion with others....*" Compl., Ex. A, Insuring Agreement (A). Progressive argues that K–C is not Regent's employee, and that therefore, K–C's allegedly fraudulent ac-

tivity cannot trigger liability under the insuring agreement. Def.Mem. at 9. However, the insuring agreement defines "employee" to include "each natural person, partnership or corporation authorized to perform services as data processor of checks or other accounting records of the Insureds (not including preparation or modification of computer software or programs) . . . ." By its language, the definition does not exclude those data processors who both process data and prepare or modify computer software or programs. The complaint alleges that K–C, in addition to preparing or modifying computer software or programs, entered accounting data into the K–C developed computer system, transmitted the accounting data to Regent's computers, and was an "employee" of Regent, as that term is defined in the bond. Compl. ¶¶ 15, 18, 21, 53. These allegations, read in the light most favorable to Hudson, are sufficient to survive a motion to dismiss. Accordingly, the court will not dismiss the second count of Hudson's complaint.

## IV. Conclusion

Progressive contends that loan defaults caused Regent's losses, that Regent did not operate the IFP computer system, and that K–C is not an "employee" under the terms of the Fidelity Insuring Agreement. Progressive's motion for dismissal depends on Progressive's establishing each of these contentions. The complaint, when read in the light most favorable to Hudson, does not support any of the contentions. Accordingly, Progressive's motion for 12(b)(6) dismissal of Hudson's complaint will be denied.

### Order

And now, this 22nd day of May, 2001, upon consideration of the complaint (Doc. 1), the defendant's motion for dismissal and supporting memorandum (Doc. 4), the plaintiff's response (Doc. 7), and the defendant's reply (Doc. 8), it is hereby ORDERED that the plaintiff's motion for 12(b)(6) dismissal of the complaint is DENIED.