**HUDSON UNITED BANK,**

v.

**PROGRESSIVE CASUALTY INSURANCE COMPANY.**

**No. 00–CV–4135.**

United States District Court,
E.D. Pennsylvania.

Sept. 29, 2003.

Anthony J. Costantini, Duane, Morris and Heckscher, LLP, New York, NY,

---

Gregory B. Lare, James H. Steigerwald, Matthew A. Taylor, Wayne J. Martorelli, Duane Morris LLP, Philadelphia, PA, for Hudson United Bank.

Melvin R. Shuster, Harry R. Blackburn & Associates, Philadelphia, PA, for Progressive Casualty Insurance Company.

## MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

The Court hereby submits the following Memorandum Opinion and Order in support of its July 28, 2003 ruling which granted Defendant Progressive Casualty Insurance Company's Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50(a).[1]

### RELEVANT FACTUAL AND PROCEDURAL HISTORY

In July of 1994, Regent National Bank, predecessor to Hudson United Bank (hereinafter collectively referred to as "Regent" or "Plaintiff"), entered into a profit-sharing arrangement with K–C Insurance Premium Finance Company (hereinafter "K–C"). Under the terms of the agreement, K–C was to operate and market an automobile Insurance Premium Finance ("IPF") business that would loan funds for insurance premiums to high risk automobile drivers. K–C was responsible for administering the program, and Plaintiff supplied the funding. The unused portions of the premiums were to serve as Plaintiff's collateral. Under the terms of the agreement, K–C charged a transaction-based servicing fee and was entitled to 50 percent of all net profits.

The program proved to be unprofitable. K–C's computer system generated incomplete and inaccurate data, which it then supplied to Plaintiff. For example, K–C failed to timely track or report loan defaults, thereby preventing Plaintiff from timely cancelling defaulted policies and recovering unused portions of the paid premiums. Additionally, K–C's data was inaccurate in that the computer program failed to close out accounts on a timely basis, resulting in overpayment to K–C under the profit-sharing agreement. Consequently, in October of 1997 Plaintiff submitted a proof of loss statement to Defendant seeking coverage for losses from the IPF business under the fidelity bond insuring agreement. Following substantial discussion between the parties, coverage was denied.

On August 15, 2000, Plaintiff commenced this action against Defendant in the United States District Court for the Eastern District of Pennsylvania. Counts I and II of the Amended Complaint advance breach of contract claims under the Computer System Rider and Fidelity Bond, respectively. Count III pleads a bad faith claim pursuant to 42 Pa. Cons.Stat. § 8371.

Plaintiff argues that its evidence shows that Antimo Cesaro, the person who ran K–C operations but had no ownership interest therein, intentionally defrauded Regent when K–C failed to properly report defaults. Plaintiff presented the testimony of Alvin M. Chanin, the owner of K–C. Chanin testified that he formed K–C in 1994 and that Cesaro was hired to run the operations because he had successfully headed up the operations of Universal Premium Finance Company ("UPFC"), anoth-

---

[1]. In *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 295 (3d Cir.1991), the Third Circuit Court of Appeals established a supervisory rule requiring district courts that enter directed verdicts pursuant to Rule 50 to provide the appellate court with explanations of the legal premises of their rulings. This Memorandum Opinion is submitted in accordance with *Sowell*.

er premium finance company. N.T. 7/22/03 at 13. The computer software program used by K–C was similar to the program used at UPFC so there were expectations that it would work properly. N.T. 7/22/03 at 26. There was no indication that the program had not been fully tested. N.T. 7/22/03 at 26.

Chanin testified that he was subsequently advised of K–C's deficient practice of mailing cancellation notices as well as its computer programming omission that required K–C to manually enter charge offs instead of automatically tracking them through the computer system. After financial losses associated with these deficiencies became apparent to Regent, both internal and external audits were conducted. The auditors noted deficiencies in internal controls, and suggested improvements to the system. Plaintiff and K–C collaborated to make both the suggested improvements and the program work. N.T. 7/22/03 at 92. K–C committed to Plaintiff that it would enhance the computer system to provide for a charge-off journal before the end of 1995,[2] as well as would address certain staffing issues. In light of the increased risk of the operations revealed by the audits, the auditors recommended that Regent substantially increase its reserves on the venture. As a result, Regent required Chanin, Cesaro and their wives to sign promissory notes in the total amount of $1,800,000.00 as security for the IPF business. The losses, however, continued, and in September of 1996 Regent closed down the business.

At trial, Plaintiff presented evidence that K–C failed to properly account for delinquencies and failed to advise Regent what portions of receivables were uncollectible, an act that if properly docketed would allow insurance premiums to pay for loan losses. From the inception of the IPF business, the particular computer program utilized by K–C was never capable of processing all of the necessary information regarding income, profits and other calculations. It is also clear that Chanin, Cesaro, other K–C employees, as well as Regent bank personnel, failed to adequately address these problems. While incomplete and even inflated results of the IFP business may have been reported to Regent, there was no evidence that Chanin, Cesaro or any K–C employee committed any act in a dishonest or fraudulent manner.

At the conclusion of Plaintiff's case in chief, Defendant moved for judgment as a matter of law on numerous grounds, including that Plaintiff's claims were barred by the loan loss exclusion contained in Section 2(e) of the Fidelity Bond Insuring Agreement.[3] After the parties submitted briefs and presented oral argument, the Court granted Defendant's Motion on the basis that coverage was excluded by the "loan loss" provision in Section 2(e) and that Plaintiff had not established, as required by the bond in order to circumvent the loan loss exclusion, that both collusion and financial benefit in excess of $2,500.00 had occurred. Accordingly, the Court granted judgment in favor of Defendant and against Plaintiff on Counts I and II.[4]

---

**2.** While the computer enhancement never occurred, there was testimony that it was the intent of K–C to do so at the time. N.T. 7/22/03 at 93.

**3.** In addition to raising the Section 2(e) loan loss exclusion, Defendant also asserted that it was entitled to judgment because Plaintiff admitted that it presented no evidence of collusion or justifiable reliance.

**4.** On September 30, 2002, the Court denied Defendant's Motion for Summary Judgment on the ground that material facts were in dispute. Although Defendant's Motion for Summary Judgment raised many of the same issues that were subsequently raised in the Rule 50(a) Motion, those issues were considered in a different factual context. The Court refused to summarily decide those issues in order to afford Plaintiff the opportunity to

At that time the Court also ruled that Plaintiff had failed to present sufficient evidence in support of its bad faith claim pleaded in Count III, which was dependent upon the breach of contract claims. The Court announced its ruling in open court on July 28, 2003 but noted that it would file a written opinion after the proceedings were transcribed. Upon Plaintiff's request, the Court granted Plaintiff an extension of 30 days from the filing of the memorandum opinion to perfect an appeal. However, because judgment is formally being entered at this time only, that extension proved unnecessary.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 50 provides, in relevant part, as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1).

In considering a motion under Rule 50(a), a district court is required to view all of the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993). The motion should be granted only "if there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996).

## DISCUSSION

A financial institution bond is essentially an insurance policy that indemnifies a bank for losses caused by dishonest acts. It is not intended to guarantee against bad business operations or judgment or, as in this case, against bad loans made by the insured. Therefore, coverage for loan losses is limited to instances where there is evidence of collusion *and* financial benefit of at least $2,500.00 to an employee. *See* Insuring Agreement (A). Exclusion 2(e) of the Fidelity Bond precludes coverage for any:

> *loss resulting directly or indirectly from the complete or partial nonpayment of, or default upon, any Loan or transaction involving the Insured as a lender or a borrower, or extension of credit, including the purchase, discounting or another acquisition of false or genuine accounts, invoices, notes, agreements, or Evidence of Debt, whether such Loan, transaction or extension was procured in good faith or through trick, artifice, fraud or false pretenses, except when covered under Insuring Agreement (A), (D) or (E).*

Financial Institution Bond at § 2(e). (Emphasis added.)

Insuring Agreement (A)[5] provides in-

---

circumstantially prove that fraud was present. After conclusion of Plaintiff's case in chief, however, it became apparent that on the trial record no reasonable jury could find for Plaintiff since the damages incurred by Regent were nothing more than typical loan losses due to mismanagement by both K–C and Regent. The purported fraud was utterly lacking. The law of the case doctrine does not limit the power of a trial judge to revisit issues addressed in interlocutory orders. *See Comm. Workers of Am. v. Ector County Hosp. Dist.*, 241 F.Supp.2d 617, 623–24 (W.D.Tex. 2002).

**5.** Insuring Agreements (D) and (E) relate to forgery and securities, respectively, and accordingly are irrelevant to any facts or issues in the case at bar. It is therefore necessary

demnification for:

(A) Loss resulting directly from dishonest or fraudulent acts committed by an Employee with the manifest intent:

(a) to cause the Insured to sustain such loss; and

(b) to obtain financial benefit for the Employee or another person or entity.

However, *if some or all of the Insured's loss results directly or indirectly from Loans, that portion of the loss is not covered unless the Employee was in collusion with one or more parties to the transactions and has received, in connection therewith, a financial benefit with a value of at least $2,500.*

(Emphasis added). As used in the Insuring Agreement, *financial benefit* "does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions." *Id.*

In support of its Rule 50(a) Motion, Defendant maintained that the exclusion in Section 2(e) and the controlling Fidelity Bond language with respect to coverage barred Plaintiff's right to recover under both the Computer Systems Rider and the Fidelity Insuring Agreement.

The parties do not appear to dispute that Pennsylvania law applies to the instant action. It is well settled that a federal court sitting in diversity must apply the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins,* 304 U.S.

64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This Court's decisions, therefore, are controlled by Pennsylvania law, namely applicable decisions of the Pennsylvania Supreme Court. *McKenna v. Pacific Rail Serv.,* 32 F.3d 820, 825 (3d Cir.1994). In the absence of guidance from the state supreme court, district courts are to look to the decisions of the state's intermediate appellate courts. *Id.* (citing *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 113 (3d Cir.1992)). The only Pennsylvania appellate court to have addressed the application of the "loan loss" exclusion in a fidelity bond is *First Philson Bank, N.A. v. Hartford Fire Insurance Co.,* 727 A.2d 584 (Pa.Super.1999), *appeal denied,* 561 Pa. 658, 747 A.2d 901 (1999).[6]

In *First Philson Bank,* the insured bank brought an action against its fidelity insurer seeking to recover for losses incurred as the result of an employee's alleged fraudulent activities in connection with a "floor plan" financing system set up between a bank employee and an automobile dealer. The plan involved a complex system of drawing checks on a zero balance account at the insured bank, and thereafter depositing those drafts into the business account of the car dealership at another bank in order to pay for the car dealership's purchase of non-existent cars. 727 A.2d at 585–86. A copy of the draft was also forwarded to the insured, which would then place the necessary funds into the car dealership's zero balance account and the vehicle would be assigned to the

for the Court to examine Insuring Agreement (A) only.

6. In a diversity case, the law of the forum presumptively applies. Regent's principal address was in Philadelphia, Pennsylvania. *See* Exhibit P–69. In an insurance dispute based upon diversity where the insured is from Pennsylvania, a district court applies the laws of the state where the insurance policy was

contracted, which is where it was delivered. *Frog, Switch & Mfg. Co., Inc v. Traveler's Ins. Co.,* 193 F.3d 742, 746 (3d Cir.1999). If proof as to place of delivery is lacking, there is a presumption that delivery took place at the insured's residence. *See Carosella & Ferry, P.C. v. TIG Ins. Co.,* 189 F.Supp.2d 249, 252 (E.D.Pa.2001); *Fed. Kemper Ins. Co. v. Ward,* 679 F.Supp. 489, 491 (E.D.Pa.1988), *aff'd,* 860 F.2d 1074 (3d Cir.1988).

car dealership's floor plan. The car dealership would then issue drafts on its other account to the insured bank to pay off the fictitious floor planned vehicles. This payment was not derived from the sale of vehicles but rather from the funds transferred from the car dealership's zero balance account to its other account. *Id.*

Affirming summary judgment for the insurer, the Pennsylvania Superior Court found that the scheme was actually a series of fraudulent loans, but also ruled that the exclusionary clause under the fidelity bond applied since the resultant losses would not be recoverable absent proof of collusion between a bank employee and a third party, and proof that the employee received at least a $2,500.00 benefit. The *First Philson Bank* court found the loan loss exclusion to apply, even though the bank had a relationship with the car dealership and had deposited funds into the account under false pretenses.

In opposition to Defendant's Rule 50 Motion, Plaintiff asserted authority in an unpublished Fourth Circuit Court of Appeals opinion regarding the applicability of a loan loss exclusion and specifically that it is a question of fact to be decided by a jury. *See First Savings Bank, FSB v. American Casualty Co. of Reading, Pennsylvania,* No. 92–1320, 1993 WL 27403, 1993 U.S.App. LEXIS 2049 (4th Cir.1993). In *First Savings Bank,* a lender made second mortgage loans and then sold the mortgages to savings and loans and other large investors by making misrepresentations in a *Ponzi* scheme. *Id.* at *1. The district court let the issue of a loan loss exclusion go to the jury, and the jury ultimately concluded that the exclusion applied. *Id.* at *3–4. The savings and loan

appealed. On appeal, the Fourth Circuit noted that while it would not have been persuaded by the insurance company's argument that the exclusion applied, it saw no error in submitting the issue to the jury. *Id.* at *5–6.

Plaintiff also relied upon *Peoples State Bank v. American Casualty Co. of Reading,* 818 F.Supp. 1073 (E.D.Mich.1993). In that case, the United States District Court for the Eastern District of Michigan ruled as a matter of law that the loan loss exclusion did not apply to instances where the vice-president of installment loans filled out false loan applications and forged the signatures of unsuspecting persons by signing promissory notes. Over the course of five years, the vice-president created approximately 623 false loan accounts and embezzled more than $5,000,000.00. *Id.* at 1075. In ruling upon summary judgment motions, the district court held as a matter of law that the fraudulent transactions did not constitute "loans" under the loan loss exclusion because the loans were not made at the request of customers.

Unlike the transactions in *Peoples State Bank,* the loan premium financing transactions in the case at bar were, at their core, loans. Whatever losses Regent may have sustained, those losses obviously resulted directly, or at least indirectly, from loans made by Regent under the IPF program. The so-called "collateral deterioration" resulted from the failure to recover unearned premiums on defaulted policies on a timely basis, the security that Regent relied on in the IPF loan program.[7] Moreover, while it is true that the court in *First Savings Bank* submitted the loan

---

7. Defendant also relied upon *Liberty Savings Bank, FSB v. American Casualty,* 754 F.Supp. 559 (S.D.Ohio 1990) in support of its position that the loan loss exclusion applies. There the court held that, while there was fraud involved in the particular banking transactions at issue, that fraud did not take the bank's loss outside of the loan loss exclusion clause.

loss exclusion issue to the jury, that case involved a series of fraudulent transactions. The lack of fraud in the case bar distinguishes it from *First Savings Bank.*

Upon considering all of the evidence adduced at trial, and drawing all reasonable inferences in favor of Plaintiff, any reasonable trier of fact would have been compelled to find that Plaintiff failed to establish that the losses in question were anything other than typical losses resulting from the non-payment of loans.[8] Moreover, the record is devoid of any evidence that any Regent or K–C employee obtained any financial benefit (other than remuneration for services rendered in conjunction with employment) or that any K–C personnel acted in collusion with one or more parties to the IPF transactions. Because Plaintiff sought damages stemming from the defaults in delinquent accounts in the IPF program and failed to present evidence showing either financial benefit or collusion, Plaintiff failed to establish a *prima facie* case under any of its theories of recovery upon which the case was tried. Accordingly, this Court was constrained to enter judgment in Defendant's favor.[9]

## CONCLUSION

The case was removed from the jury's consideration because the evidence, when drawn in the light most favorable to Plaintiff, failed to establish that it had sustained losses "resulting directly" from dishonest or fraudulent conduct by an employee. Instead, the evidence adduced at trial showed clearly and unequivocally that the losses in question resulted "directly or indirectly" from the non-payment of loans. Because there was no factual issue for the jury to determine and inferences pointed so strongly and overwhelmingly in favor of Defendant, the Court granted the Rule 50(a) Motion for Judgment as a Matter of Law.

An appropriate Order follows.

AND NOW, this —— day of September, 2003, upon consideration of Defendant Progressive Casualty Insurance Company's Motion for Judgment as a Matter of Law, and Plaintiff Hudson United Bank's response thereto, after briefing by the parties and oral argument thereon, it is ORDERED that the Motion is GRANTED. Judgment is hereby entered in favor of Defendant Progressive Casualty Insurance Company and against Plaintiff Hudson United Bank on Counts I, II, and III.

The Clerk is directed to close this case for statistical purposes.

8. Under the terms of the Bond, the term "loan" is defined as "all extensions of credit by the Insured and all transactions creating a creditor relationship in favor of the Insured and all transactions by with the Insured assumes an existing creditor relationship." *See* Section 1(m) Definitions.

9. While the Honorable William H. Yohn previously considered the loan loss exclusion, he considered the Defendant's argument in the context of a motion to dismiss, and assumed for purposes of deciding that motion that Plaintiff could prove that K–C fraudulently concealed data. In a Memorandum, dated May 22, 2001, Judge Yohn wrote:

Here the complaint, when read in the light most favorable to Hudson, shows that Hudson is not claiming that the defaults caused Regent's losses. Rather, Hudson alleges that because K–C concealed data, Regent could not timely cancel defaulters' insurance polices, seek refunds on the unused portions of the premiums, and consequently suffered losses. Hence, but for the concealment, Regent would not have suffered losses, and accordingly the concealment, not the default itself, caused the loss. The exclusion, therefore, does not warrant dismissal in view of Hudson's allegations. *Hudson United Bank v. Progressive Cas. Ins. Co.,* 152 F.Supp.2d 751, 754 (2001).