**COMMUNICATIONS WORKERS OF AMERICA and Urbano Herrera, Plaintiffs,**

v.

**ECTOR COUNTY HOSPITAL DISTRICT d/b/a MEDICAL CENTER HOSPITAL, et. al, Defendants.**

**No. MO–01–CA–026.**

United States District Court, W.D. Texas, Midland–Odessa Division.

Dec. 19, 2002.

David Van Os, Benjamin Cox, Matthew Gerald Holder, San Antonio, for the Plaintiffs.

William Stacy Trotter, Shafer, Gilliland, Davis, et al., Odessa, for the Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW

FURGESON, District Judge.

Before the Court is Plaintiffs' Motion for Judgment as a Matter of Law, made in open court on October 22, 2002, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. After due consideration of the evidence presented in this case, as well as applicable law, the Court is of the opinion that Plaintiffs' Motion should be GRANTED and judgment should be entered in favor of Plaintiffs as a matter of law.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Urbano Herrera was hired by Defendant Ector County Hospital District

d/b/a Medical Center Hospital ("MCH" or "Hospital") as a carpenter on January 13, 1991. In the summer of 1999, Herrera became a labor organizer for Communications Workers of America ("CWA"). In this capacity, Herrera organized weekly meetings at which Hospital employees discussed their dissatisfaction with their working conditions. At one such meeting, union officials handed out buttons, which read "Union Yes." The next day, Herrera and thirty other Hospital employees wore the buttons to work.

On the third day that Herrera wore the button, Tim Daniels, the Hospital's General Maintenance Supervisor, informed Herrera and another employee that they were in violation of the dress policy, which only allowed "pins representing the professional association and the most current hospital service award" to be worn.[1] Herrera reluctantly complied, but immediately telephoned Clay Everett, the local union president. Everett informed Herrera that the Hospital could not order him to remove the button. Thereupon, Herrera put the button back on.

After another dispute with Hospital administrators, Herrera was suspended for three days without pay for his refusal to remove the button. This suspension was recorded as a permanent disciplinary mark on Herrera's employment record. One month later, Herrera was informed that his annual raise would be only three percent, rather than the usual four percent, as a result of his violation of the dress policy. In his job evaluation, Herrera received high marks in every other category. Herrera appealed his suspension to the Hospital's grievance committee, which held a hearing on December 28, 1999 and subsequently affirmed the suspension.

On February 20, 2001, CWA and Herrera brought this suit against the Hospital, the Hospital's Board of Directors, as well as the members of the Hospital's Board of Directors and various managers and supervisors within the Hospital, all in their individual capacities. Plaintiffs brought the action under 42 U.S.C. § 1983, alleging violations of state law and the First Amendment, made applicable to the state pursuant to the Fourteenth Amendment. Plaintiffs sought declaratory relief regarding the unconstitutionality of the dress code policy prohibiting Herrera's wearing of the button; injunctive relief to prevent further enforcement of the policy and to expunge Herrera's adverse disciplinary record; compensatory damages seeking back pay for the three-day suspension and the one percent difference in Herrera's annual raise; and attorney's fees pursuant to 42 U.S.C. § 1988(b).

Plaintiffs and Defendants filed cross-motions for summary judgment, which were resolved by Judge Sarah Vance, United States District Judge for the Eastern District of Louisiana, on August 1, 2002. Judge Vance granted Defendants' Motion for Summary Judgment on the issue of qualified immunity for each of the individual defendants, whom the Plaintiffs had named in their individual capacities. Judge Vance denied Defendants' and Plaintiffs' cross-motions for summary judgment on the issue of whether Herrera was deprived of his constitutional rights under § 1983. Judge Vance also denied Defendants' Motion for Summary Judgment on the issue of CWA's standing to sue.

The trial of this case commenced on October 22, 2002. On the basis of findings contained in Judge Vance's Order, this Court found as a preliminary matter that sufficient facts had been established to

---

1. Order and Reasons at 3 (Aug. 1, 2002).

support a *prima facie* showing by Plaintiffs of a constitutional violation on the part of Defendants. The Court therefore shifted the burden of proof and allowed Defendant to proceed first. At the conclusion of Defendants' case, Plaintiffs made the present motion for judgment as a matter of law under Rule 50(a).

## DISCUSSION

### I. RULE 50(a) STANDARD

■ Rule 50(a)(1) of the Federal Rules of Civil Procedure states that if, after a party has been fully heard on an issue, there remains no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue and grant the opposing party's motion for judgment as a matter of law. Thus, a trial court may remove the case from the jury's consideration " 'when the facts are sufficiently clear that the law requires a particular result.' " [2] Before doing so, however, "the court must draw all reasonable inferences in favor of the nonmoving party." [3]

■ The fundamental question facing a court considering a Rule 50(a)(1) motion is whether an issue of fact remains for the jury to determine.[4] No such issue remains if " 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.' " [5] As discussed more fully below, the Court finds that Defendants have failed to present sufficient evidence to permit a reasonable jury to find in its favor on the remaining factual issues in this case.

### II. SUBSTANCE AND EFFECT OF PRIOR RULING

■ On a motion for summary judgment, Federal Rule of Civil Procedure 56(d) instructs the trial court, when judgment is not rendered upon the whole case or for all the relief asked, to enter an order "specifying the facts that appear without substantial controversy" in order that those facts may be deemed established upon the trial of the action. Thus, a district court denying summary judgment or granting summary judgment in part may establish the law of the case on the issues decided therein.[6] But because a denial of a motion for summary judgment or a decision to grant the motion in part is considered interlocutory in scope, the doctrine of "the law of the case" is necessarily flexible to permit reconsideration of those issues as the case progresses. Given the temporary nature of such an order pending final resolution of the case, the Fifth Circuit has recognized, in accordance with

---

**2.** *Weisgram v. Marley Co.*, 528 U.S. 440, 448, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000) (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2521, at 240 (2d ed.1995)).

**3.** *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

**4.** *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**5.** *Wallace v. Methodist Hosp.*, 271 F.3d 212, 219 (5th Cir.2001) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969)).

**6.** *Federal Deposit Insurance Corp. v. Massingill*, 24 F.3d 768, 774 (5th Cir.1994) (pointing out that a partial summary judgment order is "a pretrial adjudication that certain issues are established for trial of the case"); *United States v. Horton*, 622 F.2d 144, 148 (5th Cir. 1980) (holding that the court below "correctly perceived and performed its function under the summary judgment procedure, [in] sifting the issues and assessing the proof to determine which issues required a trial and which were ready for judgment").

Federal Rule of Civil Procedure 54(b), a trial court's freedom to reconsider and reverse or revise its decision in that regard "for any reason it deems sufficient."[7] Thus, a district court possesses plenary authority in the matter of whether to revisit issues addressed in interlocutory orders.[8] If a court in its sound discretion finds no valid grounds for reconsideration of its earlier ruling, those facts specified as uncontroverted in the interlocutory order function to narrow the issues under consideration at trial.

In her August 1, 2002 Order and Reasons denying Plaintiffs' and Defendants' cross-motions for summary judgment, Judge Vance found as follows: (1) Herrera's speech is a matter of public concern; (2) the existence of issues of material fact as to two integral factors in the *Pickering* balancing test-the impact of the "Union Yes" button on the Hospital's operations and the nature and extent of Herrera's interaction with the public-necessitated the presentation of additional evidence at trial; (3) Herrera's speech was a substantial or

motivating factor in the adverse employment actions; and (4) the Hospital would not have undertaken the same adverse employment actions in the absence of the protected speech.[9] These findings track a four-part analysis applied by the Fifth Circuit to cases in which it is alleged that a public employer's actions have impermissibly infringed on an employees' constitutionally protected interest in freedom of expression.[10]

The first two steps determine whether the employee's speech should receive constitutional protection. First, a court must establish whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern."[11] If the speech is a matter of public concern, the second step requires a finding that the employee's interest in commenting on the matter of public concern outweighs "the interest of the State, as an employer, in promoting the efficiency of the public service[s] it performs through its employees."[12] These are questions of

7. FED. R. CIV. P. 54(b) (providing that in the absence of a final judgment, "any order or other form of decision, however designated, ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"); *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 738 n. 6 (5th Cir.1993) (approving the district court's sua sponte reconsideration at the close of the plaintiff's evidence of defendant's motion for summary judgment and quoting *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 185 (5th Cir. 1990) for its endorsement of a trial court's power to rescind or modify its interlocutory orders even in the absence of circumstances such as presentation of new evidence or an intervening change in or clarification of the substantive law); *United States v. Horton,* 622 F.2d 144, 148 (5th Cir.1980) (finding that a partial summary judgment "is not immutable and has no res judicata effect"); *see also* JAMES WM. MOORE ET EL., MOORE'S FEDERAL PRACTICE ¶ 56.20 [3.–4] (stating that interlocu-

tory orders, such as partial summary adjudication, are "subject to revision by the trial court and do[ ] not have any res judicata effect").

8. *Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1269 (5th Cir.1986).

9. Order and Reasons at 24.

10. *Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir.2001) (noting that the four-step test was derived from *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

11. *Connick,* 461 U.S. at 146, 103 S.Ct. 1684.

12. *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731).

law that must be resolved by the court.[13]

■ If the *court* concludes that the employee's speech is entitled to protection under the First Amendment, the remaining two steps are necessary to establish whether the employee is entitled to the requested relief.[14] In step three, the employee has the burden of demonstrating that his protected speech was a substantial motivating factor in the adverse employment decision(s). And in step four, the burden shifts to the employer, who must then show the existence of a legitimate reason for the adverse employment action-proof that the same employment decision would have been made in the absence of the protected speech. The third and fourth steps satisfy causation and present issues of fact for the jury.[15]

*Summary Judgement Ruling on Step One of Four–Part Analysis*

■ Although Defendants disputed Judge Vance's finding in her Order and Reasons that, as a matter of law, the "Union Yes" button worn by Herrera constituted speech on an issue of public concern, her authority to make that determination, which is of a legal nature, was unquestioned. Defendants, rather, have urged this Court to reconsider the denial of summary judgment and find instead that Herrera was commenting upon matters merely of personal interest to him. The Court declines to do so. As stated in *Abshire v. Seacoast Products, Inc.*, though "a successor judge has the same discretion

as the first judge to reconsider" an order for any reason it deems sufficient, including the interests of justice and economy, principles of comity dictate that, as a general rule, a successor judge should accord considerable deference to any order rendered in that case by another judge of coordinate jurisdiction.[16] Even in the absence of that admonition, the Court has been presented with no plausible reason for reconsidering Judge Vance's determination.

*Summary Judgement Ruling on Step Two of Four–Part Analysis*

Defendants next disagreed with Judge Vance's conclusion that two significant contested issues of material fact prevented the court, upon the cross-motions for summary judgment, from performing the balancing test mandated by *Pickering*.[17] Judge Vance noted conflicting evidence as to the nature and extent of Herrera's interaction with the public and the disruption, if any, to the hospital's operations caused or threatened by Herrera's display of the "Union Yes" button on his uniform. Consistent with the Fifth Circuit's treatment of genuine issues of material fact on a motion for summary judgment,[18] Judge Vance reserved a finding of law on the *Pickering* balancing test until a jury, having heard the conflicting evidence at trial, was able to assess the credibility of that evidence and make the requisite findings of fact.

13. *Branton*, 272 F.3d at 739.

14. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 282–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

15. *Id.; Branton*, 272 F.3d at 739.

16. *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 837–38 (5th Cir.1982); *see also Barrow v.*

*New Orleans Steamship Ass'n*, 10 F.3d 292, 295 n. 9 (5th Cir.1994) (affirming a successor judge's decision to reconsider a motion for summary judgment denied by another judge in the absence of any additional discovery).

17. Order and Reasons at 17, 23.

18. *McPherson v. Rankin*, 736 F.2d 175, 180 (5th Cir.1984).

▇▇▇ In their motion under Rule 50(a), Plaintiffs urged that effect be given to Herrera's uncontested allegation in the Complaint that his "position of employment with Defendant Hospital does not entail significant interaction with the public." [19] Defendants admitted this factual assertion in their Original Answer.[20] It is well established that barring amendment, "[f]acts that are admitted in the pleadings are no longer at issue." [21] Moreover, as judicial admissions, the admitted facts are "conclusively" binding, through appeal, on the admitting party as well as the court.[22] In *Davis*, the Fifth Circuit proposed that regardless of contradictory post-pleading allegations, parties are conclusively bound by the admissions contained in their original pleadings. But prior to *Davis*, the court in *White* had also noted that "fail[ure] to contend that [a party's] admissions barred [ ]subsequent assertion of the contrary position ... effectively waived the argument that the issue was irreversibly settled." [23] Thus, the "waived" admission loses its full conclusive effect and "operate[s] as [an] adverse evidentiary admission[ ] properly before the district court in its resolution of the factual issue." [24]

▇▇▇ Here, up to the time Plaintiffs moved for judgment under Rule 50(a), all of the parties seemed to have overlooked the prior admission characterizing the degree of interaction Herrera had with the public. Plaintiffs asserted in their Opposed Motion for Partial Summary Judgment that Herrera's duties "do not require him to deal with the public," but did not point out that this fact was uncontested.[25] Defendants contradicted Plaintiffs' allegation in their reply and in the affidavit of the Director of Human Resources at the hospital.[26] Furthermore, Judge Vance's Order and Reasons found that an evidentiary hearing was required in order to resolve "the nature and extent of [Herrera's] interaction with the public." [27] This Court conducted a jury trial on the issue. For the reasons noted above, the Court declines to give conclusive effect to Defendants' prior admission in their Original Answer, but does observe that the admission is highly indicative of the Defendants' stance on this issue before it became critical to the case.

*Summary Judgement Ruling on Steps Three and Four of Four–Part Analysis*

▇▇▇ As to Judge Vance's findings that causation in the third and fourth steps had been established as a matter of law, Defendants have throughout maintained that her ruling usurped the factfinding rôle of the jury and prematurely resolved those matters where no legal conclusion had yet been reached as to whether Herrera's First Amendment rights prevailed in the *Pickering* balancing test. While it is true that if the case advances to trial it is

---

**19.** Pls' Complaint at 5.

**20.** Defs' Answer at ¶ 27.

**21.** *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir.1987) (quoting *Ferguson v. Neighborhood Hous. Servs., Inc.*, 780 F.2d 549, 551 (6th Cir.1986)).

**22.** *Id.* (quoting *White v. ARCO/Polymers*, 720 F.2d 1391, 1396 (5th Cir.1983)); *see also Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir.1972).

**23.** *ARCO/Polymers*, 720 F.2d at 1396 (citations omitted).

**24.** *Id.* (citations omitted).

**25.** Pls' Mot. for Part. Sum. J. at 8 & App. at 49.

**26.** Defs' Reply to Pls' Mot. for Sum. J. at 4; Defs' Mot. for Summ. J., App. at Ex. 1.

**27.** Order and Reasons at 20.

within the jury's province to render findings in the third and fourth steps of the analysis, it is without question that a district court may on a motion for summary judgment rule as a matter of law that the summary-judgment evidence demonstrates that no genuine issue of material fact exists for trial as to an element essential to the non-moving party's case.[28] After proper review of the summary-judgment evidence before her, Judge Vance accordingly found as a matter of law, with respect to the third step, that Herrera's speech was a substantial motivating factor in the Hospital's adverse employment actions and that, with respect to the fourth step, Herrera would not have suffered those same adverse employment actions in the absence of his protected speech.

Defendants' contention that Judge Vance was constrained to avoid drawing legal conclusions as to these two issues as part of her summary-judgment findings is not completely without merit. But the Court finds that her resolution of the third and fourth steps in advance of having reached a result favorable to the plaintiff under the *Pickering* balancing test did nothing to alter the inevitable outcome of this case. First, Defendants at no time abandoned their untenable position that the adverse employment actions were motivated by a need to punish insubordination. In their Trial Brief, submitted to the Court on October 21, 2002, Defendants state: "If Plaintiff Herrera had removed the button from his uniform on any of the numerous occasions he was asked to do so by his supervisors, he would not have been disciplined."[29] Although Defendants would argue that this statement is taken out of context, insofar as it was meant to support the contention that Herrera's in-subordination was the motivating factor in the decision to discipline him, this Court rejects that argument, in accord with Judge Vance. Rather, this statement is an unequivocal admission that Herrera's display of the "Union Yes" button was a substantial motivating factor in the decision to discipline him. Further, that Herrera's employment records contain no references to previous instances of misconduct assists in persuading this Court that the Hospital had no grounds for disciplining Herrera in the absence of his protected speech.

In their Motion to Reconsider and more recently in their Trial Brief, Defendants did not urge that new evidence or a change in the law necessitated reexamination of these issues. Instead, Defendants continued to maintain that this case concerned only an employer's right to discipline an insubordinate employee. In short, Defendants have nowhere indicated that evidence they would have offered on these issues at trial would in any material way have differed from that which had already been considered and rejected by Judge Vance.

Second, if Herrera's speech had instead been accorded no constitutional protection, any earlier findings with respect to causation would have had no effect. This Court here grants Plaintiffs' motion under Rule 50(a) because Defendants were unable to demonstrate a legally sufficient evidentiary basis from which a reasonable jury could find either that Herrera had significant interaction with the public or that his display of a "Union Yes" button on his uniform interfered with the Hospital's essential functions. With these factual issues resolved, the Court weighed those factors with others in the *Pickering* balancing

---

**28.** Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**29.** Defs' Trial Brief at 18.

test, concluding that Herrera's interest in commenting upon matters of public concern outweighed the Hospital's stated interests. Had this Court instead declined to grant judgment for Plaintiffs under Rule 50(a) and found that Herrera's speech was not entitled to First Amendment protection, Judge Vance's findings on the third and fourth elements would have been rendered moot without posing harm to either party.

### III. *PICKERING* BALANCING TEST

As the Court stated at the commencement of trial, only step two of the constitutional analysis-the *Pickering* balancing test-would remain at issue in this case. In this step, the Court, with the aid of the jury, must balance Herrera's interest in engaging in the protected speech against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." [30] The State's burden in justifying its action or policy varies depending upon the nature of the employee's expression.[31] "The more central a matter of public concern is to the speech at issue, the stronger the employer's showing of counter-balancing governmental interests must be." [32] Relevant considerations in performing this balancing analysis include the impact of the speech on employee performance, discipline by superiors, harmony among co-workers, close working relationships, and the regular operations of the employer.[33] Also to be considered are the time, place, and manner of the employee's expression.[34]

In her Order and Reasons denying Defendants' and Plaintiffs' cross-motions for summary judgment on the § 1983 issue, Judge Vance specifically noted the two factual issues in need of resolution in order for the Court to perform the *Pickering* balancing test. These issues were: 1) whether Herrera's employment involves a significant amount of interaction with the public; and 2) whether Herrera's speech caused or threatened to cause a disruption of the Hospital's efficient functions. This Court reiterated these issues immediately prior to the commencement of trial.

*Herrera's Interaction With the Public*

First, as discussed above, Defendants stipulated in their Original Answer that Herrera's employment does not entail significant interaction with the public. But even if this admission is not deemed conclusive, Defendants did not present evidence at trial to support the assertion that Herrera's employment does, in fact, bring him in frequent contact with the public. At trial, multiple witnesses testified that Herrera's performance of his duties as a carpenter often takes place in rooms that have been vacated pending renovation.[35] Herrera's interaction with the public while at work is essentially confined to casual interactions (*e.g.*, passing patients and others in the corridors, elevators, or cafeteria) or unavoidable interactions, such as when a room in which Herrera is performing

**30.** *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

**31.** *Connick v. Myers*, 461 U.S. 138, 150, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

**32.** *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir.1991).

**33.** *See Rankin*, 483 U.S. at 388, 107 S.Ct. 2891.

**34.** *Id.*

**35.** *See* Tr. at 72, 143, 202–03.

repairs has not been vacated.[36] No testimony elicited by Defendants at trial suggests that Herrera's employment entails any regular or meaningful contact with the public.

No bright line standard exists to define what degree of public contact is necessary to justify the government's interests in suppressing an employee's protected speech. But even in the absence of a clear standard, the case law establishes that Herrera's contact with the public falls well short of any reasonable threshold.

On one side of this threshold, the Fifth Circuit Court of Appeals, in *INS v. FLRA*, has held that "when a law enforcement agency enforces an anti-adornment/uniform policy in a consistent and nondiscriminatory manner, a special circumstance exists, as a matter of law, which justifies the banning of union buttons." [37] The *INS* court reasoned that the border patrol is a "para-military law enforcement unit," which has a particularly strong interest in regulating the uniformity of its employees' appearances.[38] In addition, the job of border patrol officials is to inspect both persons and vehicles at the port of entry for contraband, a task that requires frequent contact with the public.[39]

In a similar case, the Sixth Circuit overruled a decision by the National Labor Relations Board ("NLRB") to invalidate a fast food restaurant's no-button policy, finding the policy enforceable to the extent it applied "to employees who have contact with the public." [40] The Court did not define the scope of the phrase "contact with the public," but determined that a drive-in window employee who greeted customers came under that standard.[41]

On the other side of the threshold, a district court in the District of Columbia offered a partial list of employees with insufficient public contact to justify a similar regulation.[42] The restriction in that case was a policy by the Veterans Administration banning all political buttons while on duty.[43] The Court enjoined enforcement of the policy, finding that it applied to several types of employees who were "unlikely to have any contact with the public ... on any kind of regular basis," including: cook, baker, laundry worker, clerk-stenographer, card punch operator, fire fighter, plumber, voucher examiner, payroll clerk, telephone operator, and mail clerk.[44]

In light of these decisions, the Court is compelled to conclude that Herrera's interaction with the public, like that of many of the positions listed by the district court in *Pierce*, is insufficient to justify the broad dress code policy of the Hospital. No evidence in the record suggests that Herrera's public interaction even remotely resembles that of a border patrol agent or a fast food restaurant worker, whose job descriptions inextricably involve direct public contact. Under such circumstances, no issue was presented that would have allowed for a reasonable jury finding in favor of Defendants. The Court holds,

36. *See* Tr. at 44–46, 143.

37. 955 F.2d 998, 1004 (5th Cir.1992).

38. *Id.*

39. *Id.; see also INS v. FLRA*, 855 F.2d 1454, 1456 (9th Cir.1988).

40. *See Burger King Corp. v. NLRB*, 725 F.2d 1053, 1055 (6th Cir.1984).

41. *Id.* at 1054.

42. *See American Fed'n of Gov't Employees v. Pierce*, 586 F.Supp. 1559 (D.D!C.1984).

43. *Id.* at 1560.

44. *Id.* at 1562 n. 5.

therefore, as a matter of law that no "special circumstances" exist to justify Defendant's refusal to permit Herrera to wear the union button.

*Disruption of Hospital's Efficient Functions*

 Notwithstanding the absence of "special circumstances" on the basis of Herrera's public contact, the Hospital may enforce the policy if necessary to prevent disruption of its efficient functions. But Defendants again failed to present sufficient evidence on this issue at trial to support a reasonable jury finding in its favor.

Defendants correctly asserted in their opposition to the present motion that an employer is not necessarily required to show any actual disruption of the workplace to justify a restriction on employee speech.[45] But they incorrectly suggest that a mere showing that disruption is "more likely than not"[46] necessarily suffices to justify the regulation. As the Supreme Court held in *Connick,* "the state's burden in justifying a particular discharge varies depending upon the nature of the employee's expression."[47] The Court added that "a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern."[48] In the present case, Judge Vance, whose findings have been adopted by this Court, already determined as a matter of law that Herrera's speech involved a matter of public concern, thus warranting a stronger showing of disruption by Defendants.[49]

*Connick* held that a Court should also consider whether "close working relationships" are essential to the performance of the employee's responsibilities, and the extent to which the employee's speech undermines those relationships.[50] The *Connick* Court, for example, found such close relationships essential to an environment involving assistants in a district attorney's office.[51] The courts have further found that First Amendment rights are more easily outweighed when dealing with policymaking or executive employees, due to the fragile nature of such relationships and the particular importance of loyalty.[52]

The evidence presented by Defendants at trial suggests no similar circumstances in the present case. As discussed above, Herrera's employment responsibilities involve little social interaction. His duties are not the type for which "personal loyalty and confidence are necessary to their proper functioning."[53] Moreover, even if such relationships were essential to Herrera's job duties, no evidence suggests that his performance was compromised as a

---

**45.** *See Connick v. Myers,* 461 U.S. 138, 152, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.").

**46.** Tr. at 232.

**47.** *Id.* at 150, 103 S.Ct. 1684.

**48.** *Id.* at 152, 103 S.Ct. 1684.

**49.** Order and Reasons at 15; *see also INS v. FLRA,* 955 F.2d 998, 1006 (5th Cir.1992) (assuming, "without deciding, that wearing the union button does constitute speech on a matter of public concern").

**50.** *Connick,* 461 U.S. at 151–52, 103 S.Ct. 1684.

**51.** *Id.* at 151, 103 S.Ct. 1684.

**52.** *See Gonzalez v. Benavides,* 774 F.2d 1295, 1301–02 (5th Cir.1985); *Kinsey v. Salado Indep. Sch. Dist.,* 950 F.2d 988, 994 (5th Cir. 1992).

**53.** *Pickering v. Bd. of Educ.,* 391 U.S. 563, 569, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

result of his speech. To the contrary, the record shows that his job evaluation contained "high marks in every category except for his violation of the dress code policy."[54]

Also relevant to the determination of disruption is the time, place, and manner of the speech.[55] In *Connick*, where the speech at issue was a questionnaire critical of an employee's supervisors, the Court noted that the questionnaire was prepared and distributed at the office, and that it required the plaintiff and others to leave work in order to complete it.[56] The Court held this to be sufficiently disruptive. But in *Rankin*, the Court attached less weight to the fact that an employee's controversial statement was made at the office, holding that "there is no evidence that it interfered with the efficient functioning of the office."[57] Unlike in *Connick*, the purpose of the speech in *Rankin* was not a "final act of defiance," intended "to stir up other people" or "undermine office relations."[58]

This case more closely resembles *Rankin*. The wearing of pro-union buttons did not require Herrera or any other employee to depart from his regular employment duties. There is no evidence that Herrera attempted or caused a "mini-insurrection," as in *Connick*, within the Hospital.[59] Again, the record reveals exactly the opposite: that Herrera's performance warranted "high marks."[60]

Finally, the Court should consider whether the context in which the speech occurred suggests that it is "hostile, abusive, or insubordinate [so] as to disrupt significantly the continued operation of the office."[61] Here, Herrera's speech was not a public criticism of a close supervisor;[62] it was not a challenge to the Hospital's authority;[63] it did not pose an immediate threat to the Hospital's operations;[64] and it was not accompanied by Herrera's refusal to perform his regular employment duties.[65] In fact, the only actual disruption attested to by Defendants was Herrera's confrontation with Tim Daniels, the Hospital's General Maintenance Supervisor, and John Durham, the Hospital's Director of Engineering, regarding the dress code policy itself. Just as other courts have found that "refusing to obey an order that implicates an employee's First Amendment rights is not a sufficient reason for disciplining the employee," this Court holds that an employer's insistence upon enforcing an unconstitutional policy cannot create the very disruption the policy purports to prevent. When the only evidence of conflict stems from an employee's resistance to impermissible efforts to suppress that employee's speech, such conflict cannot be attributed to the employee.

54. Order and Reasons at 4.

55. *Connick*, 461 U.S. 138, 152, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *McBee v. Jim Hogg County, Texas*, 730 F.2d 1009, 1017 (5th Cir.1984).

56. *Connick*, 461 U.S. at 153, 103 S.Ct. 1684.

57. *Rankin v. McPherson*, 483 U.S. 378, 388–89, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

58. *Connick*, 461 U.S. at 152, 103 S.Ct. 1684.

59. 461 U.S. at 141, 103 S.Ct. 1684.

60. Order and Reasons at 4.

61. *McBee v. Jim Hogg County, Texas*, 730 F.2d 1009, 1017 (5th Cir.1984) (citing *Connick*, 461 U.S. at 153, 103 S.Ct. 1684).

62. *Connick*, 461 U.S. at 153, 103 S.Ct. 1684.

63. *Gonzalez v. Benavides*, 774 F.2d 1295, 1302 (5th Cir.1985).

64. *Id.*

65. *Id.*

Accordingly, the Court finds as a matter of law that Defendants have failed to produce at trial sufficient evidence of actual or potential disruption of the Hospital's efficient functions to justify the restraint of Herrera's protected speech. Thus, the Court finds that: 1) Defendants have not met their burden of production on the aforementioned issues to permit a reasonable jury to find in their favor; 2) the *Pickering* balancing test favors Plaintiffs; 3) Defendants in consequence have not rebutted Plaintiffs' *prima facie* showing of the unconstitutionality of the dress code policy; and thus 4) Plaintiffs are entitled to judgment as a matter of law.

## IV. DAMAGES

Pursuant to this Court's October 24, 2002 Order and its Amended Order of November 5, 2002, the parties have submitted briefs regarding proposed damages, injunctive relief, and attorney's fees to be awarded in favor of Plaintiffs. The Court will now turn to the question of relief for Plaintiff Herrera.

*Plaintiffs' Motion for Damages and Personal Injunctive Relief for Herrera*

■ As discussed above, Defendants' suppression of Herrera's rights under the First Amendment caused him harm. Herrera's punishment for wearing the "Union Yes" button cost him a three-day suspension, a reduction in his annual pay raise, and negative marks on his employee record. Plaintiffs request the following to make Herrera whole: 1) monetary damages in the amount of $548.85; and 2) an injunction ordering Defendants to expunge any negative mark in Herrera's employee

file resulting from the First Amendment "stand-off."

Defendants, deciding to ignore Judge Vance's findings of fact and law and this Court's grant of judgment as a matter of law in Plaintiffs' favor, elected in their Response to Plaintiffs' Motion for Damages and Personal Injunctive Relief for Herrera to re-brief the Court on all of the decided issues.[66] Although tempted, the Court will not strike the entire Response as Plaintiffs have suggested in their Reply. However, the Court will disregard all of Defendants' arguments (in the same way Defendants have disregarded the Court's rulings) and focus solely on the pertinent points raised in opposition to Plaintiffs' Motion.

Thus, Defendants' first relevant argument is that Herrera, as an at-will employee, was not entitled under any contractual provision to a four percent annual pay raise. Rather, Defendants assert that annual raises are contingent upon several factors, including job performance. Herrera offers proof that every year since he was hired in 1991 he has received a four percent annual increase in his hourly pay rate.[67] But the year he was punished for wearing the "Union Yes" button, his personnel action form reflects a three percent raise.[68] A letter prepared by the Hospital and accompanying the form explains that the smaller raise was attributable to Herrera's violation of the dress code policy.[69] In addition, Defendants admitted in its Response that "Plaintiff Herrera received a three percent(3 %) raise solely because of his insubordination." Thus, Defendants

---

**66.** For example, Defendants argued, in direct defiance of two court rulings, that 1) wearing the button was not speech on a matter of public concern; 2) Plaintiffs failed to satisfy the *Pickering* test; 3) Herrera was not disciplined for wearing the "Union Yes" button.

**67.** Pls.' Mot. Dam. Pers. Inj. Rel, Herrera Aff. & Exs. 1–9.

**68.** *Id.* at Ex. 11.

**69.** *Id.* at Ex. 10.

agree that Herrera's exercise of free speech led to his receiving a smaller raise. Since there seems to be no dispute in this regard, the Court will award Herrera $256.63, which reflects the one percent difference in his salary caused by the reduction.

Herrera was also suspended from work for three days as a result of refusing to remove the "Union Yes" button in the exercise of his right to free speech. Once again, Defendants argue nothing other than that "it was not the wearing of the button or even Plaintiff Herrera's violation of the dress code policy that precipitated the disciplinary action."[70] The Court ignores Defendants' insistence that the "Union Yes" button was not even a part of this twenty-month litigation, and awards Plaintiff Herrera $292.32 in lost wages as a result of the three-day suspension.[71]

█ Finally, Herrera asks the Court to aid in repairing his employee record, which contains negative marks reflecting his decision to wear the "Union Yes" button. Defendants here assisted the Court in pointing to a Supreme Court case requiring a "real and immediate" constitutional injury as a predicate to injunctive relief.[72] Defendants also point to a Fifth Circuit opinion requiring a reasonable likelihood of a future constitutional violation as a precursor to injunctive relief.[73]

Defendants' argument completely misses the mark. First of all, *City of Los Angeles* dealt with a plaintiff who alleged that he was illegally choked by the police.[74] He sought an injunction forbidding the police force to use the chokehold.[75] The Supreme Court denied the injunction, requiring the plaintiff to show the expectation of further altercations with the police.[76] Second, in that same case, the Supreme Court discussed an earlier case, where it observed that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... *if unaccompanied by any continuing, present adverse effects.*"[77]

Here, Defendants' unconstitutional suppression of free speech left an indelible mark on Herrera's employment file. The negative commentary contained in the file will undoubtedly have an effect on Herrera's ability to seek promotion in the Hospital, or to seek a positive recommendation for outside work. The harm has already been done and will certainly cause injury to Herrera in the future. In addition, the nature of the equitable relief Herrera is seeking, *i.e.* expungement of the negative references, is a common remedy in similar cases.[78] Accordingly, the Court enjoins

70. Def.s' Resp. Pl. Mot. Dam. Inj. Rel. at 5.

71. The Court asks Defendants to ponder the following question: if Plaintiff Herrera had *never* worn a button at all, would the altercation in the cafeteria and subsequent disciplinary action have taken place?

72. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

73. *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir.1986). The Court notes that the case cited does not actually contain the quote attributed to it.

74. *City of Los Angeles*, 461 U.S. at 97, 103 S.Ct. 1660.

75. *Id.*

76. *Id.* at 105–06, 103 S.Ct. 1660.

77. *Id.* at 102, 103 S.Ct. 1660 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (emphasis added)).

78. *See, e.g., Hewitt v. Helms*, 482 U.S. 755, 758–59, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); *Sebastian v. Texas Dept. of Corrections*, 541 F.Supp. 970 (S.D.Tex.1982).

Defendants to expunge from Herrera's employee file any and all files or records referring to:

(1) the charge of insubordination;

(2) the three-day suspension;

(3) the three-month probation;

(4) the 2000 performance evaluation, dated January 17, 2000, which is to be replaced with an evaluation signed by Herrera's manager and director reflecting the following amendments:

a. the note "One Documented Incident" under "Appearance and Habits" is removed;

b. the note "Dress Code ... Refer to Same Incident" under "Compliance" is removed;

c. the rating for "Compliance" is changed from "1" to "4;"

(5) the "Supporting Evaluation Comments" page;

(6) the 2000 Personnel Action Form, which is to be replaced by a form reflecting a four percent lump sum increase in the amount of $1,026.13.

The Court believes that these injunctive measures will make Herrera whole following the harm he has suffered.

*Plaintiffs' Motion for Permanent Injunction*

██ It is also necessary for the Court to grant broader injunctive relief to protect Herrera's and other designated employees' right to wear pro-union buttons. Defendants' dress code policy is unconstitutional insofar as it purports to restrict all employees, even those without significant interaction with the public, from wearing a pro-union button. Defendants mistakenly believe that a completely restrictive policy is necessary to preserve the sanctity of the public hospital.[79] The Court, in finding the policy overbroad, reminds Defendants that "American citizens may not, consistent with the Constitution and laws of the United States, be deprived of their legitimate rights because the exercise of these rights might be offensive" to some people, whether patients or Hospital employees.[80] In light of Defendants' failure, under the *Pickering* analysis, to justify the restrictiveness of the dress code, the Court believes that injunctive relief is necessary to rectify the chilling effect the code has had on the free speech rights of Herrera and certain other Hospital employees.

Plaintiffs have requested a sweeping permanent injunction that would allow all employees—engineers, housekeepers, nurses, and doctors—to wear a pro-union button at the Hospital. Although Plaintiffs make a convincing argument that "*any* employee in *any* area of the hospital" should be allowed to wear the pro-union buttons, the Court declines to issue such a broad injunction.[81] In keeping with the suggestion made during trial, the Court believes that all of the employees in the Hospital's "Integrated Services" organization, including, but not limited to, Engineering, Housekeeping, Dietary, Laundry, Printing, Customer Support Services, Transport, Purchasing and Central Supply, and Distribution are entitled to wear a pro-union button.

Although Defendants raise several objections in their Response, the main concern is that the injunction will open the

---

**79.** Although it should be noted that Defendants have already demonstrated that the anti-adornment policy can be applied flexibly, by admitting that employees are allowed to wear buttons in support of their favorite local sports teams.

**80.** *American Fed'n of Gov't Employees v. Pierce,* 586 F.Supp. 1559, 1563 (D.D.C.1984).

**81.** Pls.' Mot. Perm. Inj. at 9 (emphasis in original).

floodgates and allow buttons reflecting views on controversial issues such as abortion.[82] But the Court finds that Defendants' anxiety is unfounded. This case is about Defendants' failure to make any showing that the button's pro-union message caused a disturbance in the Hospital, or that Plaintiff Herrera had frequent contact with the public. In arguing that the button in no way led to the disciplining of Herrera, Defendants essentially concede that the message of the button is harmless and does not cause a disturbance. Rather, Defendants maintain that the *wearing* of the button violates a provision of the dress code, which the Court has found in this limited circumstance to be too restrictive. Therefore, the Court is not advocating a complete abrogation of the anti-adornment policy; it is simply insisting that the policy operate within the confines of the Constitution. The injunction will protect Herrera's and like-employees' right to wear pro-union buttons. The Hospital must decide, always mindful of the mandates of the Constitution, in what other contexts it will allow the exercise of free speech.

*Plaintiffs' Application for Attorney's Fees and Expenses*

■ The Plaintiffs, as the "prevailing party" in a § 1983 claim, are entitled to recover "reasonable" attorney's fees and costs under 42 U.S.C. § 1988(b). Courts exercise "broad discretion" in determining whether a prevailing party should receive attorney's fees, subject to an "abuse of discretion" review.[83] In this case, the Court notes the relatively innocent (and protected) activity undertaken by Herrera in wearing the "Union Yes" button, and the swiftness and severity with which the Defendants stamped out the protected speech. Yet, given the Hospital's reaction, Herrera still chose to stand up for his constitutionally protected rights. Moreover, since the litigation began, Defendants has fought Herrera's wearing of the button tooth and nail, refusing to abate its argument or to address, even in the alternative, the issues set forth by two different judicial officers. The Defendants' adamant refusal to deal with the rulings of Judge Vance or this Court led to an inordinate amount of wrangling.[84] Instead of focusing on the remaining controversy, Defendants flouted the Courts' findings of fact and law. While Defendants earnestly believe that their trial strategy and motion practice were necessary to preserve certain arguments for review, the end result was a very costly legal battle. In this action, Defendants basically adopted a "fight to the last breath" strategy and, therefore, understandably, Plaintiffs expended substantial resources in meeting those efforts.

Although the attorneys for Defendants were absolutely certain that both judges in this action were completely wrong in their analysis of the issues, it must be observed that, even when lawyers disagree with judges, they normally humor judges enough to address the issues that the judges believe to be important in the matter. Counsel need not adopt a judge's view of a case, but they should, at a minimum, confront it. While declining to do so, as here, illustrates abundant self-confidence, it also elongates a case and adds greatly to its cost, which happened in this

---

**82.** Defendants once again argue that no constitutional violation took place, and proceed to inform the Court that no injunction is necessary. As before, the Court will ignore those parts of Defendants' argument that do not address the specifics of the injunction.

**83.** *See Gibbs v. Gibbs,* 210 F.3d 491, 500 (5th Cir.2000).

**84.** Ironically, Defendants accuse Plaintiffs of ignoring the findings of Judge Vance (Def.'s Resp. Pls.' Br. Sup. Perm. Inj. C.1.).

instance. As such, in the exercise of its discretion, the Court believes that full compensation of Plaintiffs' legal fees is appropriate, as modified below.

Plaintiffs seek to recover attorney's fees in the amount of $91,189.00 and legal costs in the amount of $7,334.75. Defendants contend that these charges are unreasonable, inflated, not credible, and not supported by any proof. Additionally, Defendants argue that Plaintiffs' photocopying expenses are excessive.

■ To calculate reasonable attorney's fees, the Court determines the "lodestar" by multiplying the number of hours spent on the litigation by a reasonable hourly rate.[85] The Court evaluates the reasonableness of the fee requested in light of the factors set forth by the Fifth Circuit: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[86]

■ Plaintiffs' requested hourly rates for attorney's fees must be reasonable within the relevant market.[87] Here, the relevant market is Midland–Odessa. Plaintiffs' lead attorney, David Van Os ("Van Os"), is the president and sole shareholder of the professional corporation David Van Os & Associates, P.C.[88] He has twenty-six years of legal experience, is AV-rated in Martindale–Hubbell's peer review rating system, and has been listed in Woodward & White's *Best Lawyers in America* in the category of Labor & Employment Law since 1986.[89] Moreover, in this case, he prevailed on a motion under Rule 50(a) in a relatively complex First Amendment Claim.[90] It is Van Os's opinion that $250 per hour is a reasonable hourly rate for his services.[91] In addition, Van Os attests that his co-counsel, Benjamin Cox, and paralegal Rebekah Maldonado, are entitled to $200 and $65 per hour, respectively.[92]

Defendants contend that $250 per hour is excessive, and submit two affidavits from attorneys in Midland–Odessa law firms attesting that $150 to $175 is a more reasonable rate in the relevant legal market.[93] Defendants also assert that Cox's hourly rate is inflated, and should be set at $100.00.[94]

As noted above, the Court's determination of attorney's fees turns on reasonableness, to be guided by, but not requiring strict adherence to, the local market. The

**85.** *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

**86.** *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), *overruled on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

**87.** *See Blum v. Stenson,* 465 U.S. 886, 895–96, n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

**88.** Pls.' Appl. Att'y's Fees, Van Os Aff. at 3–4.

**89.** *Id.* at 1.

**90.** *Id.* at 2–3.

**91.** *Id.* at 2.

**92.** *Id.* at 3.

**93.** Defs' Resp. Pl. Appl. Att'y's Fees, Tidwell Aff. at 2, O'Leary Aff. at 2.

**94.** *Id.* Tidwell Aff. at 2–3, O'Leary Aff. at 2.

case at hand presented some novel issues and was logistically complex, and the Court cannot find that the rates requested by Plaintiffs are unreasonable, even if higher than the rates suggested by Defendants. Accordingly, the Court shall fix the hourly rate at $250 per hour for David Van Os, $200 per hour for Benjamin Cox, and $65 per hour for paralegal Rebekah Maldonado.[95]

▮ Defendants also argue the time spent by Plaintiffs' attorneys was inflated, excessive, and improper. Plaintiffs can only recover attorney's fees for time "reasonably expended on the litigation."[96] Without delving into the specifics of each transaction that Plaintiffs' listed and how much time each activity *should have* taken, the Court finds that the hours listed are reasonable and not excessive, especially in light of the stage the litigation reached. Therefore, Defendants shall pay $91,189 in attorney fees to Plaintiffs.

▮ Plaintiffs also seek to recover costs they incurred in litigation. Even though Plaintiffs request "out-of-pocket expenses" under § 1988, the Court determines which of these costs, not included in attorney's fees, are appropriate under the general statute covering the award of costs in federal court.[97] The Court may decline to award certain costs, but may not tax expenses that are not listed in 28 U.S.C. § 1920.[98] Under § 1920, taxable court costs include fees of the clerk and marshal; fees of the court reporter for transcripts necessarily obtained for use in the case; fees for printing; and fees for exemplification and copies of papers necessarily obtained for use in the case. Plaintiffs bear the burden of proving the amount and necessity of their costs.[99] The Court should give "careful scrutiny" to the items that are listed as costs.[100]

▮ In their bill of costs, Plaintiffs seek $7,334.75 for the following expenses: copying expenses, long distance charges, fax expenses, UPS charges, computer research expenses, postage expenses, and travel expenses. Although Defendants have only objected to the amount of copying expenses, the Court finds many items to be incidental costs of running a law office that cannot properly be taxed as litigation costs. For instance, postage, including regular mail, UPS and express delivery, is not included in § 1920 and is therefore not recoverable as a cost.[101] In addition, charges for telephone, faxes, and legal research are not listed in the statute and represent "overhead" costs, not litiga-

---

**95.** In a recent decision, another federal judge found that "a reasonable fee for an attorney in Midland working on this case in 2000–2001 should not exceed $300 for the most senior partners." *P.V. Patel, M.D. v. Midland Mem'l Hosp. & Med. Ctr.* No. 99–159 (W.D.Tex. Oct. 23, 2002). The plaintiffs, the losing party, opined that $250 was a maximum reasonable fee for Midland partners. *Id.*

**96.** *See ACLU of Georgia v. Barnes,* 168 F.3d 423, 433–34 (11th Cir.1999).

**97.** 28 U.S.C. § 1920.

**98.** *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 442, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *Fogleman v. ARAMCO,* 920 F.2d

278, 285 (5th Cir.1991); *Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.,* 952 F.Supp. 415 (N.D.Tex.1997).

**99.** *See Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir.1994).

**100.** *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964).

**101.** *Embotelladora,* 952 F.Supp. at 415 (N.D.Tex.1997) (citing *El–Fadl v. Cent. Bank of Jordan,* 163 F.R.D. 389, 390 (D.D.C.1995)).

tion costs.[102] Finally, Plaintiffs seek recovery of the travel expenses of their attorneys, which are also not recoverable under § 1920.[103]

■ Defendants have specifically objected to the amount listed for copies. Section 1920(4) allows the prevailing party to be reimbursed for "exemplification and copies of papers necessarily obtained for use in the case."[104] The Fifth Circuit has stated that "[b]efore the district court can tax costs for photocopies, it must find that the copies for which costs are sought were necessarily obtained for use in the litigation. Moreover, the party seeking costs must offer some proof of the necessity."[105] Here, Plaintiffs have not divided the copy costs into the appropriate categories, such as documents obtained from third parties, deposition exhibits, and pleadings. The fees for copying, which are reimbursable under § 1920, amount to $2511.58. Because Plaintiffs did not meet their burden of explaining the necessity of the copying charges enumerated or even describing what was copied, the Court will reduce their copying costs by fifty percent, awarding a total of $1,255.79 in litigation costs.

## CONCLUSION

It is ORDERED that Plaintiffs' Motion for Judgment as a Matter of Law, pursuant to Federal Rule of Civil Procedure 50(a) be GRANTED.

It is further ORDERED that Defendants pay monetary damages in the amount of $548.85 to Plaintiff Herrera.

It is further ORDERED that Defendants expunge from Plaintiff Herrera's employee file any and all files or records of

any negative references arising out of the constitutional violation, as specified above.

It is further ORDERED that Defendants be enjoined to allow all of the employees in its "Integrated Services" organization to wear pro-union buttons.

It is further ORDERED that Defendants pay Plaintiffs $91,189 in attorney fees and $1,255.79 in litigation costs.

## FINAL JUDGMENT

On this day, the Court entered an Order granting Plaintiffs Communication Workers of America's and Urbano Herrera's Motion for Judgment as a Matter of Law as authorized by Federal Rule of Civil Procedure 50(a). The Court now enters its Final Judgment pursuant to Federal Rule of Civil Procedure 58.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Judgment as a Matter of Law, pursuant to Federal Rule of Civil Procedure 50(a) be GRANTED.

It is further **ORDERED** that Defendants pay monetary damages in the amount of $548.85 to Plaintiff Herrera.

It is further **ORDERED** that Defendants expunge from Plaintiff Herrera's employee file any and all files or records of any negative references arising out of the attempt to abridge Plaintiff Herrera's rights under the First Amendment as outlined in the Court's Order Granting Plaintiffs' Motion for Judgment as a Matter of Law.

It is further **ORDERED** that Defendants be enjoined to allow all of the em-

**102.** *Embotelladora,* 952 F.Supp. at 415 (N.D.Tex.1997) (citations omitted).

**103.** *See Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 891 (5th Cir.1993); *Roche v. City of Normandy,* 566 F.Supp. 37, (E.D.Mo.1983).

**104.** 28 U.S.C. § 1920.

**105.** *See Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir.1994).